State v. Langley.

Sufficiency of evidence.

---

THE STATE v. JOHN LANGLEY, Appellant.

Division Two, March 12, 1913.

1. **EVIDENCE: Burden of Proof: Criminal Law.** The burden is upon the State in a criminal prosecution to establish every constituent element of the offense, and this burden remains with the State throughout the trial.

2. **MISTREATING CHILD: Sec. 4492, R. S. 1909: Proving Negative.** Under Sec. 4492, R. S. 1909, providing that if any father of a child under sixteen years old shall, "without lawful excuse,"

248 Mo.—35

refuse or neglect to provide necessary food, etc., he shall be punished, the State must prove that the refusal or neglect charged was without lawful excuse.

3. ————: ————: **Evidence: Appeal.** Evidence *held* not sufficient to support a conviction under Sec. 4492, R. S. 1909.

4. ————: ————: **Instructions: Surplusage.** The addition of the words "knowingly failed" after the words "without lawful excuse" in an instruction given in a prosecution under Sec. 4492, R. S. 1909, for mistreatment of a child, is not reversible error.

5. ————: ————: ————: **Necessary Elements:. Assuming Facts.** An instruction in a prosecution under Sec. 4492, R. S. 1909, for mistreating a child, is erroneous if it fails to include the qualifying phrase "without lawful excuse," and if it assumes that certain elements of the charge have been proved, by saying "although you may find that the defendant wilfully failed, refused or neglected to provide for his infant children *as shown by the evidence,*" etc.

Appeal from Hannibal Court of Common Pleas.— *Hon. William T. Ragland,* Judge.

REVERSED AND REMANDED.

*Thomas F. Gatts* for appellant.

*Elliott W. Major,* Attorney-General, and *A. W. Stewart* for the State.

The information charges the offense in the language of the statute. R. S. 1909, sec. 4492. When the act defines the offense, it is sufficient to charge the offense in the language of the act. State v. Davis, 70 Mo. 464; State v. Adcock, 65 Mo. 590; State v. Block, 82 S. W. 1103.

WILLIAMS, C.—At the January term, 1912, of the Hannibal Court of Common Pleas, the defendant was convicted for violation of the provisions of section 4492, Revised Statutes 1909, which said section is as follows:

"If any mother of any infant child, under the age of sixteen years, or any father of any such infant

child, born in or legitimatized by lawful wedlock, or any person who has adopted any such infant child, or any master or mistress of an apprentice, under such age, or other person having the legal care and control of any such infant shall, without lawful excuse, refuse or neglect to provide for such infant or apprentice necessary food, clothing or lodging, or shall unlawfully and purposely assault such infant or apprentice, whereby his life shall be endangered or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not exceeding one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment.''

Defendant's punishment was assessed at two years in the penitentiary. He appeals to this court.

The State's evidence tended to prove the following facts:

Defendant and his wife, Sadie Langley, had been married about twenty-five years, and had three children living at the time of the trial, each under the age of sixteen years. During the greater portion of the five years preceding the day of the trial, defendant and his wife, had, by mutual consent, lived apart, she having the three children with her. During this period the husband and wife were in continuous litigation, each trying to procure a divorce from the other. Three or four different suits were brought, but neither party was decreed a divorce. The final separation of husband and wife occurred in August, 1909, at which time the wife, taking the children and some of the household furniture with her, removed to what was known as the Shamrock building, in the city of Hannibal, Missouri, and she and the children continued to live there until the latter part of January, or first part of February, 1911, when she, taking the children

with her, went across the river, and onto a farm in Illinois, to work for a farmer.

From August, 1909, till about January 25, 1911, defendant paid fifteen dollars per month to his wife to aid in providing for the children. These payments seem to have been made in compliance with an order of the court in which one of the divorce proceedings was pending. Just before defendant's wife removed, with the children, to Illinois, she told him that she was going to take the children and go to Illinois to work for a man named Green, who was to give her three dollars a week and provide a home for herself and children. Defendant consented to her going and taking the children with her, and then told her that he was going to his half-brother's, at St. Joseph, Missouri. The wife and children remained in Illinois for about three months, and until she became sick, when she returned to Hannibal and went to her mother's house, where she remained, sick, for a few weeks, and then, on May 15, 1911, she, with her children, again went to live at the Shamrock building. On May 18, 1911, defendant returned from St. Joseph to Hannibal, and was arrested three days later, charged with this offense. Defendant had no notice or knowledge of the return of his wife and children to Hannibal until May 18, 1911, the date of his return. The wife testified that she knew defendant's half-brother, in St. Joseph, well, but that she made no effort to notify him, or her husband through him, of the fact of her return or of the condition of the children.

Evidence was introduced by the State, over defendant's objection, showing that the children became destitute after the return from Illinois, and that their health was injured by reason of their not having sufficient food and clothing, but the court later, by instruction, directed the jury not to consider this part of the State's evidence, presumably on the theory that

defendant had not been notified, and was without knowledge, of the situation at that time.

The evidence showed that prior to the time the wife and children went to Illinois they were living in one room, the floor of which was without carpet, with little or no furniture aside from a cook stove and bed in the room, and that during portions of this time the wife and children were without sufficient food and received aid from a charitable organization in the city of Hannibal. It is not shown what attitude defendant took with reference to supporting the children upon his return from St. Joseph.

Defendant testified in his own behalf that he had lived in Hannibal all his life, and had worked for eleven years at the powder plant there; that for the greater part of the seven years next preceding the trial he had worked at a cement plant there, but that on December 26, 1910, the work at the cement plant was discontinued until the following spring, during which interval he was without work; that he had paid his wife fifteen dollars a month until just before he left for St. Joseph, where he went to seek employment, and that before leaving he told his wife where he was going. His testimony corroborated that of his wife as to the arrangement she had made about taking the children with her to Illinois. He testified that during the time he was making the monthly payments of fifteen dollars he was working at the cement plant on the night shift at $1.60 per day, and that during a portion of that time he had worked for only about three or four nights in each week, and had to pay car fare out of his wages. He also testified that, in addition to paying his wife fifteen dollars a month, he purchased school books and some clothing for the children, and had a grocer named McDonald deliver groceries to his wife and children at different times up till she left for Illinois; that from the time his wife went to Illinois until he returned to Hannibal, in May, 1911,

he received no word from her, or from any source, concerning his family, and that he knew nothing of their condition until after his return to Hannibal. Defendant further testified that while in St. Joseph he procured a decree of divorce, that the court made an order awarding him the custody of the children, and that, a few days before he returned to Hannibal, he re-married; that, upon his return to Hannibal, he demanded the children, but that their mother refused to let him have them, and in a day or so thereafter had him arrested.

Witness McDonald testified in behalf of defendant that he had been in the grocery business at Hannibal for thirty years, and had known the defendant about twenty-five years. Corroborating defendant's testimony in that regard, he testified that he had furnished groceries to defendant's wife at different intervals up until she left for Illinois. This witness also testified that defendant had been a customer of his for several years, and had always paid his bills, including those for the groceries furnished the wife after defendant and his wife had separated.

Appellant complains (1) that the evidence is not sufficient to support the verdict, and (2) that the court erred in the giving of certain instructions.

I. In order to avoid confusion or misunderstanding concerning the questions involved in this case, we desire at the outset to call attention to three separate statutory offenses involving violations of parental duty.

Section 4490, Revised Statutes 1909, makes it a felony for a parent, etc., of a child under six years of age to expose such child in a street, field or other place, with intent wholly to abandon it.

Section 4490, as amended by the Act of 1911 (Laws 1911, p. 193), provides that, "If any man shall, *without good cause,* abandon or desert his wife, or abandon his child or children under the age of fifteen

years, born in or legitimatized by lawful wedlock, and shall fail, neglect or refuse to maintain and provide for such wife, child or children," he shall be punished by fine, or by imprisonment in the county jail, or by both.

Section 4492, the provisions of which defendant is charged with violating, provides that, "If any mother of any infant child, under the age of sixteen years, or any father of any such infant child, born in or legitimatized by lawful wedlock . . . shall, *without lawful excuse,* refuse or neglect to provide for such infant . . . necessary food, clothing or lodging, . . . *whereby his life shall be endangered, or his health shall have been or shall be likely to be permanently injured,* the person so offending shall, upon conviction, be punished," etc.

It will be noticed that in order for the father to be guilty of a violation of this statute, he must, first, refuse or neglect to provide the child with necessary food, clothing or lodging; second, such refusal or neglect must be *without lawful excuse*; third, the refusal or neglect to so provide must endanger the child's life or permanently injure his health, or be such as shall be likely to permanently injure the child's health. The first and second of these statutory requirements must exist at the same time, and the third must directly result therefrom.

In determining the sufficiency of evidence to convict of any offense, it first becomes necessary to inquire and determine what facts must be proved by the State to sustain a conviction. It will not be questioned but that the State in this case is required to prove the first and third requirements above enumerated; but as to the second requirement, viz., that the act of refusal or neglect must be committed without lawful excuse, some question may arise.

A careful review of the record fails to disclose any evidence tending to show absence of "lawful ex-

cuse.'' There is no evidence as to the financial ability of the defendant, or as to whether by the wages he received for his labor, or by other means in his possession or within his control, he was able to furnish more than the fifteen dollars per month which he did furnish up to about the time his wife and children went to Illinois. It is not the purpose of the statute to place a penalty upon the inability of the parent. There could be no criminal intent in a case of this character when the accused does not possess the ability to do that which he omits to do, unless he, with criminal intent, brings about or aids in bringing about his inability. According to the defendant's testimony, he rendered all the aid he was able to render up to the time his children went to Illinois, where they were to have a home, and he had no knowledge or information concerning the changed condition until he returned to Hannibal. The record is silent as to what he did, or what attitude he took, with reference to their support upon his return. The evidence shows that he made no secret of his whereabouts in St. Joseph, and it is not shown that he went to St. Joseph secretly, or for the purpose of shirking responsibility for the support of his children.

The burden is upon the State to establish every constituent element of the offense charged, and this burden remains with the State throughout the trial. [State v. Hardelein, 169 Mo. 579.] After a careful review of the authorities, we have come to the conclusion that in proving a charge under the statute in question, it was incumbent upon the State to show facts and circumstances which would tend to prove that the refusal or neglect with which defendant is charged was ''without lawful excuse.'' The rule is well stated in Chamberlayne's Modern Law of Evidence, vol. 2, sec. 960, as follows:

*Mistreating child: burden of proof:*

*Proof of negative*

"Where proof of the offense charged involves showing negative allegations, the State's burden of proof may require that, so far as reasonably capable of proof, these should be established by the prosecution. In the same way, where the Legislature or judiciary has established certain exceptional states of fact under which the penalties prescribed by law do not attach, it is the duty of the State to negative the existence of these both in allegation and proof."

Certain exceptions are then recited by the learned author which fall without the scope of the issues involved here. To the same effect are the following authorities: State v. Hirsch, 45 Mo. 429; Underhill on Crim. Ev., (2 Ed.), sec. 24, p. 44; 2 Ency. of Evidence pages 802(d), 804(2); 1 Greenleaf on Evidence (16 Ed.), sec. 80.

In prosecutions under the statute (section 4495) making it an offense for a man to abandon his wife or children, *without good cause,* the appellate courts of this State have adhered to the rule requiring the State to prove absence of "good cause." [State v. Doyle, 68 Mo. App. 219, and other cases.] In the case of State v. Linck, 68 Mo. App. l. c. 162-163, Judge BOND, in stating the rule in cases of that kind, uses the following language: "In establishing the first proposition, it is incumbent on the State to give evidence of the absence of good cause for the abandonment, although in so doing it is necessary to prove a negative." And further: "The evidence in this case does not warrant a conviction. It wholly failed to prove . . . a failure to provide for the wife and family to the extent of the income of the husband."

It therefore follows that the evidence in this case is not sufficient to support the verdict.

II. Appellant complains of instruction No. 1, given by the court, in that said instruction added the words "knowingly failed" to the words of the statute.

State v. Langley.

**Instructions: Surplusage.** The statute uses the words "refuse or neglect." By this instruction the jury were allowed to convict defendant if they found that he had, without lawful excuse, *knowingly failed*, refused or neglected, etc. The phrase "knowingly failed" does not differ in meaning from the word "neglect," used in the statute, to the extent that its use in the instruction would constitute reversible error.

Appellant also complains of instruction No. 2 given by the court, which instruction is as follows:

"The court further instructs the jury that although you may find that the defendant wilfully failed, refused or neglected to provide for his infant children as shown by the evidence, with sufficient food, clothing and lodging for the sustenance of their body and health, yet unless you further find that such failure, refusal or neglect actually endangered the lives of said children, or permanently injured the health of said children, or was likely to permanently injure their health, you cannot find the defendant guilty."

This instruction is clearly erroneous. It omits the qualifying phrase, "without lawful excuse;" and **Assuming facts.** the phrase, "as shown by the evidence," should have been omitted, because it assumes that certain elements of the charge were proven.

The judgment is reversed and the cause remanded. *Roy, C.,* not sitting.

PER CURIAM.—The above opinion by WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.