THE STATE v̇. LOUIS JONES, Appellant.

Division Two, December 31, 1924.

1. **INFORMATION:** Filed by Prosecuting Attorney: Interested Party. An information filed by a prosecuting attorney who is the interested party and complainant and the principal witness for the State should be quashed by the court on its own motion. The filing of an information by a prosecuting attorney in a matter in which he is the interested party and the complainant is not due process of law, violates the fundamental rights of the citizen guaranteed by other provisions of the Constitution, is contrary to the statutes, and amounts to maladministration of the criminal law.

2. **INTOXICATED AUTOMOBILE DRIVER:** Evidence. In the prosecution of defendant charged with driving a motor vehicle while in a state of intoxication, testimony that shortly before the collision on the public street of his automobile with the complainant's car, defendant so drove his automobile as to crowd another car on to the curb, is admissible; but it is error to permit a witness to testify that some one at the time in defendant's automobile shouted to him to "get out of the road" unless it is shown that the words were uttered by defendant.

State v. Jones.

3. ———: ———: **Irrelevant Matters: Poisoning Mind of Jury.** In the prosecution of a defendant charged with driving an automobile on a city street while in a state of intoxication, for the State's attorney to ask a witness on cross-examination if defendant had whiskey in his house, or if witness was ever on defendant's place when "they had a still in operation," and to ask defendant's mother if a certain occurrence happened before or after the still was found at her house, and for counsel for the State to remark, when a witness who was in defendant's automobile was asked why they had gone to the house of defendant's mother, that he thought that he knew and that the reason was that "they had some whiskey out there," is to bring into the case irrelevant matters, which show a partisan spirit in the prosecution, and are calculated to poison the minds of the jury against defendant, and are of themselves sufficiently flagrant violations of his rights to authorize the court to discharge the jury.

4. ———: ———: **Other Convictions: Impeachment.** Testimony of the prosecuting attorney, testifying for the State, that he had twice had defendant "in court here and had convicted him," and a remark of the special counsel for the State, when interrogating another witness, that defendant was charged with having a still and was convicted, all made before defendant had testified, were improper and highly prejudicial. The former convictions of defendant can be used only for purposes of impeachment, but are not proper for that purpose until he has offered himself as a witness, under the statute (Secs. 4036, 5439, R. S. 1919), and to inject unfair insinuations into a trial deserves severe condemnation.

5. ———: **Instruction: Assumption of Guilt.** Defendant was charged with driving a motor vehicle while in a state of intoxication, and the court instructed the jury that if they found from the evidence that "the defendant, being then and there in an intoxicated condition, did unlawfully and feloniously operate, drive or run a certain Ford motor vehicle," etc. *Held*, that the instruction did not require the jury to find that the defendant was in an intoxicated condition, but by the words "being then and there in an intoxicated condition" assumed that he was guilty of the crime charged.

Citations to Headnotes: 1, Constitutional Law, 12 C. J. pars. 958, 980, and District and Prosecuting Attorneys, 18 C. J. par. 39; 2, Motor Vehicles, 28 Cyc. 50; 3 to 5, Criminal Law; 3, 16 C. J. pars. 2258, 2270; 4, 16 C. J. pars. 2157, 2353; 5, 16 C. J. par. 2328.

Appeal from New Madrid Circuit Court.— *Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

State v. Jones.

*S. J. Smalley* for appellant.

(1) Instruction numbered 5, defining the words "intoxicated condition," given by the court, was error. Sec. 4028, sub. 5, R. S. 1919; State v. Prendible, 165 Mo. 329; State v. Mansfield, 41 Mo. 473; State v. Webb, 254 Mo. 434; State v. Welton, 225 S. W. 968. (2) The court erred in the admissibility of testimony. The court permitted the State to prove: (a) That defendant was guilty of other independent crimes. (b) To impeach defendant as a witness before he went on the stand. (c) That defendant had been convicted of specific crimes, to-wit, assault to rape and disturbing religious worship. Evidence of other independent crimes is inadmissible, and is reversible error. Underhill on Criminal Evidence (2 Ed.) sec. 87; State v. Moberly, 121 Mo. 610; State v. Parker, 96 Mo. 382. Defendant could be impeached as a witness only after he went on the stand, not before. Sec. 4036, R. S. 1919; State v. Spivey, 191 Mo. 110; State v. Wellman, 253 Mo. 319; State v. Conway, 241 Mo. 279. The State could impeach defendant by showing he had been convicted of a criminal offense only, and to further show he had been convicted of assault to rape and disturbing religious worship was reversible error. Sec. 5439, R. S. 1919; State v. Larkin, 250 Mo. 240; State v. Hildebrand, 285 Mo. 299. (3) The court erred in failing to instruct the jury that evidence of other crimes by defendant could only be considered for the purpose of affecting his credibility as a witness, and not as any evidence of his guilt. State v. Wellman, 253 Mo. 318; State v. Conway, 241 Mo. 291. (4) The court erred in giving instruction numbered 1. The instruction should have required the jury to find defendant guilty of the charge contained in the information. This it did not do, and is, therefore, erroneous. Kelley's Cr. Law & Prac. (3 Ed.) p. 203, sec. 246; State v. Harris, 209 Mo. 423.

*Jesse W. Barrett,* Attorney-General, and *William L. Vandeventer,* Special Assistant Attorney-General, for respondent.

(1) It was not error to show the character of offenses of which appellant had been convicted. The record could have been introduced under the provisions of the statute and that would necessarily show the character of the offense. Sec. 5439, R. S. 1919. (2) The statement of witness Massengill as to prior convictions of appellant was stricken out. However, this proof was made again after appellant testified, and if error, was harmless. State v. Massey, 274 Mo. 578; State v. Beedle, 180 S. W. 888. (3) Evidence of other crimes is admissible where it tends to prove the crime charged or is so interwoven with the evidence of the crime charged as to be inseparable. State v. Slater, 256 S. W. 1068; State v. Peters, 242 S. W. 897; State v. Grant, 79 Mo. 113; State v. Prunty, 276 Mo. 632; State v. Drummins, 274 Mo. 632; State v. Conway, 241 Mo. 271. (4) Instruction 1 was not erroneous. Where the uncontradicted evidence shows that the alleged crime was committed before the filing of the information it is not error for the court to fail to instruct that the jury find the offense was committed before the filing thereof. Moore v. State, 55 Tex. Crim. 3; State v. Gould, 261 Mo. 694; Green v. State, 66 Tex. Crim. 446.

HIGBEE, C.—The defendant was convicted of driving an automobile while in an intoxicated condition, and appealed.

The information was filed by J. M. Massengill, prosecuting attorney, on March 12, 1923. It charges that the defendant, on November 12, 1922, at the county of New Madrid, he being then and there in an intoxicated condition, did unlawfully and feloniously operate, drive and run a certain Ford motor vehicle on Powell Avenue in the city of New Madrid, endangering the life,

limb and property of other persons, against the peace and dignity of the State. The cause was tried to a jury and a verdict of guilty returned, assessing the punishment at imprisonment for a term of two years in the penitentiary. We quote from the statement by the Assistant Attorney-General:

"The evidence on the part of the State tended to show that on the 12th day of November, 1922, the appellant was driving a Ford car north on Powell Avenue in the city of New Madrid. The prosecuting witness, J. S. Massengill, who was also the Prosecuting Attorney of New Madrid County, was driving south on the same street in an eight-cylinder Oldsmobile at the rate of about three or four miles per hour. The prosecuting witness was on the right side of the street going south. Appellant was on the west side of the street going north, and was driving his car at an excessive rate of speed. When he got even with the prosecuting witness he turned to the left and ran squarely into the left side of the Oldsmobile, doing it considerable damage.

"There was considerable evidence that appellant was in an intoxicated condition, based upon his breath smelling of whiskey and his general deportment being that of an intoxicated person. After the collision appellant offered to pay the prosecuting witness for the damage that he had done, which offer was refused. There were three other persons in the car with him at the time, and the State's evidence showed that they immediately left the scene of the collision. The testimony seems to show that two informations had been filed against the appellant, the one in question here and another for reckless driving, which was still pending in the Circuit Court of New Madrid County. . . '.

"Appellant's testimony was that he was going north on Powell Avenue and saw the prosecuting witness coming south on the wrong side of the street at a distance approximately one hundred fifty feet away; that the prosecuting witness acted like he intended to

turn east, but instead of doing so turned his car abrupt-
ly toward the west, and was run into by the car of the
appellant, causing injury to each of the cars; that he
was only running about twelve or fifteen miles an hour,
and applied his brakes as quickly as possible, but was
unable to avoid the accident because of the negligence
of the prosecuting witness; that he was not intoxicat-
ed, nor had he been drinking intoxicating liquor at all,
but that the accident was wholly the fault of the pros-
ecuting witness by being on the wrong side of the street
and by turning directly across Powell Avenue in front
of appellant.''

The appellant's testimony as to the circumstances
of the collision of the two automobiles and that he was
not intoxicated was corroborated by several witnesses.
It was a close case on the facts.

The defendant was nineteen years of age at the
time of the trial. He lived with his widowed mother,
three miles east of New Madrid. After breakfast on
Sunday morning, November 12, 1922, the defendant, in
company with Enoch Floyd and Carl Akers (who were
visitors of the family) and another boy, drove to New
Madrid to get some bread and meat for dinner. They
had been driving about town an hour or more when the
collision occurred.

Mr. Massengill, the prosecuting attorney, was the
principal witness for the State. On cross-examination
he was asked: "Q. He [the defendant] was sober
enough to talk? A. Yes, sir. Q. You are not very
well acquainted with him? A. I have been in court with
him here twice and convicted him, I believe.'' On motion
this was stricken out.

George Traylor, a witness for the State, on cross-
examination, testified: "A. Well, I have seen several
fellows drunk and I have seen him [defendant] drunk
several times.'' A motion to strike out this answer was
overruled.

State v. Jones.

Rebel Imboden, a witness for the State, testified: "I saw the defendant about 8:30 o'clock on that Sunday morning in his car. Saw defendant afterwards riding in his car. I saw him crowd Mose Lilly over on the curbing; if Mose hadn't got right up on the curb he would have hit him." An objection to this evidence was overruled. Continuing, the witness testified: "There were some boys in the car with Jones. I got a paper and was going down to Doctor McKinney and they passed me right here. I heard one of the boys; I don't know whether it was Jones or not; I heard him say, 'Get out of the road, you big s— o— b— or I will run over you; that was to Mose Lilly.' " A motion to strike this answer and to direct the jury to disregard it was over-ruled.

Enoch Floyd, a witness for the defendant and in the car at the time of the collision, was asked on cross-examination: "Q. Why wasn't you drunk on this occasion? A. Because I wasn't. Q. You had plenty of opportunity out at Jones's didn't you?" (Objection overruled). "A. No, sir. Q. Jones has whiskey at his home?" (Objection to this was overruled). "A. Never saw any out there. Q. They don't make it out there? A. No." (Objection made). "By THE COURT: He said no. Q. Were you ever out there when they had a still in operation? A. No." Objection being made, the court said: "No, there wasn't any proof, and he said he didn't know anything about it.

Carl Akers, a witness for the defendant, was asked on cross-examination: "Q. What were you coming up here for? A. Why do people go visiting? Q. I think I know; they had whiskey out at Jones's?" An objection to this was overruled. "A. No, there was not. By MR. SMALLEY: You know so much about a still why don't you charge him with it? MR. GALLIVAN, special counsel for the State: He was charged with it and convicted. MR. SMALLEY: I ask that counsel be rebuked and repri-manded for making that statement and I except to the

court in refusing to reprimand counsel.'' There was no ruling or response by the court.

In the cross-examination by the State of Mrs. Mary Jones, mother of and witness for defendant: ''Q. Did this happen before or after the still was found at your place? A. Wasn't no still found in my place.'' An objection being interposed, the court said: ''She's already answered.''

The defendant testified that he had not been drinking and was not drunk, and that the collision occurred because Massengill abruptly turned his car east in front of defendant's car and he was unable to avoid the collision. One of the witnesses for the State testified that he did not think the defendant was drunk; that he did not act like he was drunk; ''maybe dazed from the jolt of that wheel where he hit his wheel.''

Instructions 1 and 5 for the State, are as follows:

''1.   The court instructs the jury that if you find and believe from the evidence in this case, beyond a reasonable doubt, that at the County of New Madrid and State of Missouri, on or about the 12th day of November, 1922, or at any time since the 2nd day of November, 1921, the defendant, Louis Jones, *being then and there in an intoxicated condition,* did unlawfully and feloniously operate, drive and run a certain Ford motor vehicle on Powell Avenue in the city of New Madrid, you will find the defendant guilty as charged in the information and assess his punishment at imprisonment in the penitentiary for a term of not more than five years nor less than two years, or by imprisonment in the county jail for a term not exceeding one year or by a fine not exceeding one hundred dollars, or by both such fine and imprisonment.

''5.   The court instructs the jury that defendant is not being tried for careless driving, speeding or violating any other law than the one which prohibits driving while in an intoxicated condition, and even though the proof should convince you that defendant was guilty

of careless driving, speeding or some other offense, you cannot convict him unless you find him guilty of driving a motor vehicle while in an intoxicated condition, as defined in another instruction.''

I.   The information charged the defendant with operating a motor vehicle while in a state of intoxication.   Mr. Massengill, the Prosecuting Attorney of New Madrid County, filed the information and was the principal witness for the State.   The evidence discloses that he is an interested party; his car and the car of the defendant were in collision.   On account of his personal interest in the matter he was disqualified to act as prosecuting attorney or to prefer a charge based on the alleged criminal conduct of the defendant.   [Sec. 742, R. S. 1919.]   The trial court had inherent power, independent of the statute, to appoint a special prosecuting attorney for the State when the prosecuting attorney, for any reason, was disqualified.   [32 Cyc. 719.]

*Information: Filed by Interested Prosecuting Attorney.*

Our Bill of Rights provides:   ''That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government and that when government does not confer this security it fails of its chief design.''   [Sec. 3, Art. II, Mo. Constitution.]  Section 12 reads:   ''No person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information which shall be concurrent remedies.''   And Section 30 reads:   ''That no person shall be deprived of life, liberty or property without due process of law.''

These are vital principles of our organic law. Every citizen is entitled to invoke their protection. The security of protection against criminal prosecution

otherwise than by indictment or information is one of the chief functions of government. The law has carefully guarded against partisan prosecutions. Grand juries are sworn "to make true presentment; that they will present no one for any hatred, malice or ill-will; that they will present things truly." This is probably the chief guaranty of the citizen against spiteful prosecutions. However, the Constitution and the statute empower the prosecuting attorney to initiate criminal prosecutions by information, in lieu of indictments, which must be verified by his oath or by the oath of some person competent to testify as a witness in the case, or be supported by the affidavit of such person, which shall be filed with the information; the verification by the prosecuting attorney may be upon information and belief. [Sec. 3849.] The oath of the prosecuting attorney is required as an assurance of his good faith. In this respect he performs the functions of the grand jury. The Constitution and the statute contemplate that an information may be filed only by a qualified or disinterested prosecuting attorney. It was never contemplated that he should be empowered to set in motion criminal proceedings against a citizen in a case in which he is interested. Such a proceeding is not due process of law, but a prostitution of the criminal process of the State and a reproach to the administration of justice.

"Due process of law in each particular case," quoting Judge Cooley's definition, "means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.". . . "The correct interpretation is that the term was intended to perpetuate old and well-established principles of right and justice by securing them from abrogation or violation." [12 C. J. 1188-

1190;   Wilcox v. Phillips, 260 Mo. 664, 679, 169 S. W. 55.]

We have held that when a trial judge is interested in a cause he is disqualified.   In re Howell and Ewing, 273 Mo. 96, 122, WALKER, P. J., referring to State ex rel. v. Wear, 129 Mo. 619, 624, said:

"In discussing these constitutional and statutory provisions the court said: 'It is plain that Judge Wear by his relation to his son, the defendant, was disqualified, and knowing this, it was his imperative duty to either order the election of a special judge or to call in the judge of another circuit to sit in the trial of the said indictment.' "

The filing of this information by an interested prosecuting attorney is an object lesson of maladministration of the criminal code.   When it appeared that the prosecuting attorney was an interested party the information should have been quashed by the court on its own motion.

II.   The State charged that defendant drove the Ford car while in a state of intoxication.   Evidence was introduced that while driving the car on the Sunday morning in question and before the collision with Massengill's car, the defendant so drove his car as to

**Evidence.** crowd Mose Lilly's car onto the curb.   This was admissible as tending to show that defendant was intoxicated at the time.   The purpose of this evidence was properly limited by instruction numbered 5.   But it was error to permit the witness Imboden to testify that some one in the car said: "Get out of the road," etc.   It was inadmissible until it was shown the words were uttered by the defendant.

III.   The partisan spirit of the prosecution was exhibited throughout the trial, as indicated by portions of the evidence above set out.   One witness was allowed

to testify, over objection, that he had seen the defendant drunk several times. Enoch Floyd was asked on cross-examination if Jones had whiskey at his house. "Q. They don't make it out there? Were you ever out there when they had a still in operation?" These questions were apparently answered in the negative before objections were or could be interposed. On cross-examination of Carl Akers he was asked by counsel appearing for the State, what he had come up to Mrs. Jones's for? Then answering his own question, counsel said: "I think I know; they had some whiskey out at Jones's." An objection to this was overruled. In addition to this, counsel for the State asserted that the defendant had been charged and convicted of keeping a still. When the court was asked to rebuke and reprimand counsel, it does not appear that the court made any response. Counsel also asked Mrs. Jones, on cross-examination: "Did this happen before or after the still was found at your place?" These and other questions were asked and assertions made by counsel that had no relevancy to the issue on trial. Their object and purpose were plainly to divert the attention of the jury from the issue on trial and to poison their minds against the defendant. For these flagrant violations of the rights of the defendant, the court might very properly have discharged the jury. A disinterested prosecuting attorney will endeavor to exclude all testimony foreign to the issues and thus assure the defendant a fair and impartial trial.

*Poisoning Mind of Jury.*

IV. The testimony of the prosecuting witness that he had been in court here with him (the defendant) twice, and had convicted him, was improper. This was stricken out by the court. The defendant could not properly be impeached by proof of prior convictions until he offered himself as a witness (Sec. 4036, R. S. 1919) when he may be interrogated as to former convictions. [Sec. 5439, R. S. 1919.] This statute must be

strictly construed and enforced. [State v. Blitz, 171 Mo. 530, 542.]

Here we have an illustration of the importance of a strict compliance with this statute. Massengill testified that the defendant had been *here,* in court, that is, the circuit court, and convicted twice. What the convictions were for does not appear. Special counsel for the State asked a witness for the defendant: "Jones has whiskey at his home? Were you ever out there when they had a still in operation?" While interrogating another witness the same counsel said: "He [the defendant] was charged with it [having a still] and convicted." The court sanctioned this statement by the representative of the State by failing to rebuke counsel when requested to do so. Again, Mrs. Jones was asked: "Did this happen before or after the still was found at your place?" Thereafter, when the defendant was under cross-examination, he stated that he had been convicted of rape and that he had also been convicted of disturbing religious worship in a justice's court. If there had been other convictions than the two confessed by the defendant, the State might in rebuttal have produced the record thereof. But this was not done. So there was before the jury the sworn testimony of the prosecuting attorney that *he* had twice convicted the defendant in the circuit court, and the statement of special counsel that defendant had been convicted of having a still in his possession. It is apparent that this impeachment of the defendant before he took the witness stand and before it could be known that he would be a witness, was improper and highly prejudicial. "The practice of seeking to obtain an advantage in a trial of a case by injecting therein unfair insinuations should have the severest condemnation and suffer the most disastrous result permissible under the law." [Parris v. Crutcher, 189 Mo. App. 150, 154, 173 S. W. 1080.] Furthermore, proof of the conviction of the defendant of other offenses is admitted to affect his credibility as a witness and for

no other purpose (Sec. 5439, R. S. 1919) and the court should instruct the jury accordingly.

V.  We are of the opinion that in the use of the words italicized in the first instruction for the State, the jury was not required to find that the defendant was in an intoxicated condition at the time he was driving the automobile.

*Instruction: Assumption of Guilt.*

In State v. Ferguson, 221 Mo. 524, we quote Syllabus 3:

"The instruction told the jury that 'if you believe and find from the evidence that the defendant, at any time within three years before the filing of the information in this case, being then and there the keeper or the person in charge of a certain house, to-wit, the apartments on the second floor of the building located at number 409 Boonville Street in the city of Springfield, said house and apartments being at such time used as a common bawdyhouse, or house of assignation, did then and there feloniously permit a certain female,' etc. *Held,* not to submit to the jury the question of fact whether the defendant was the keeper or person in charge of the house described, nor whether said house was at the time mentioned being used as a common bawdyhouse, or house of assignation, but assumes such issuable facts to be true, and is therefore reversible error." [See State v. Steele, 226 Mo. 583, 599, 126 S. W. 406; State v. Castor, 93 Mo. 242, 248 (2), 249, 5 S. W. 906; State v. Langley, 248 Mo. 545, 554, 154 S. W. 713; State v. Lee, 182 S. W. 972, instruction 6, p. 973, and par. 4, 974; also Kelley's Crim. Law, sec. 394.]

In 16 Corpus Juris, page 949, the rule is thus stated:

"In charging a jury the separate elements essential to constitute the crime should be stated clearly to the jury in such a manner as not to render it possible for the jury to think that any disputed fact is thereby assumed to be true; and hence, as a general rule it is error for the court, in its charge, to assume, either directly or indirectly, the existence or non-existence of

any material fact in issue on which there is either no evidence, or on which the evidence is controverted or, if undisputed, is such that different inferences reasonably might be drawn therefrom. It is clearly error for the court to assume the existence of facts in support of which there is no evidence.''

The judgment is reversed and the cause remanded. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.