**STATE of Missouri, Respondent,**

v.

**Michael Laverne BURTON, Appellant.**

**No. KCD 28626.**

Missouri Court of Appeals,
Kansas City District.

Nov. 4, 1976.

Motion for Rehearing and/or Transfer Denied Nov. 12, 1976.

Application to Transfer Denied Jan. 10, 1977.

Theodore M. Kranitz, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from conviction by a jury of rape. Appellant charges errors in connection with the refusal of testimony from a nondisclosed defense witness, and of the result of a trial in a separate offense; the defense of not guilty by reason of mental disease excluding responsibility; failure of the State to disclose a psychologist's test results; improper hypothetical questions to the State's expert witnesses; refusal to disqualify the prosecuting and assistant prosecuting attorneys; testimony of a State's psychiatrist; and newly-discovered evidence. Affirmed.

Appellant does not question the sufficiency of evidence to support his conviction. The record contains evidence to show that on July 25, 1974, defendant went to the apartment of his victim in St. Joseph, Buchanan County, Missouri, and, by deception, obtained entrance and at gun point forced her to have sexual intercourse with him. Such constituted the offense of rape. § 559.260, RSMo 1969. The jury so found and by its verdict rejected the tendered defense of not guilty by reason of mental disease or defect excluding responsibility.

■ Appellant contends (I) that the court erred in refusing, on ground of prior nondisclosure, to permit Donna Burton to testify when called by defendant.

On the second day of trial defendant attempted to call his mother, Donna Burton, to testify in his behalf. The State objected on ground the defendant had not disclosed Mrs. Burton. The court recognized its discretion to allow a nondisclosed witness to testify but declined to exercise such discretion after counsel conceded he had been aware before trial of Mrs. Burton as a possible witness.

Appellant argues that the court's ruling was an abuse of discretion resulting in denial of due process. He asserts he had no obligation to make disclosure to the State because there was no written request for disclosure by the State.

Rule 25.34(A), V.A.M.R., provides:

" * * * subject to constitutional limitations, on written request by the state, the defendant shall disclose * *."

Rule 25.35(A), V.A.M.R., provides:

" Subject to constitutional limitations, the state may make a written motion in the court having jurisdiction to try the case requesting the defendant to disclose material and information not covered in Rule 25.34 * * *."

The foregoing rules do contemplate disclosure to the State by a defendant upon written request and by filing a motion. Simeone, *The New Rules of Criminal Discovery in Missouri*, 31 Mo.Bar J. 17, 21. There is nothing in the rules, however, to prohibit a waiver of the provision for written request or motion, and the circumstances in this case demonstrate that defendant waived the necessity of written request or motion.

Prior to trial, defendant moved to require the State to make disclosure pursuant to Rules 25.32 and 25.33, V.A.M.R. The court ordered the requested disclosure and, upon oral request of the State, suggested the defendant reciprocate. The State made the ordered disclosure and its sufficiency is not in question in this point. The defendant, in response to the court's suggestion and in his words, "provided complete disclosure to plaintiff." This was accomplished by defendant by a filing wherein defendant, "pursuant to VAMR 25.34 and 25.35, and in the absence of written motion or request for disclosure, discloses the following information [a list of witnesses 'defendant intends to call'] like that moved by defendant that the State provide defendant and ordered by the Court: * * * Defendant reserves the right to call any disclosed witness, regardless of whether or not listed above." Defendant's disclosure was further accomplished by a second filing wherein defendant, "pursuant to VAMR 25.34 and 25.35, without *written* motion or request for disclosure as required by said rules, and supplemental to his previous disclosure, discloses [an additional witness] * * *." There is no question that the name of Mrs. Burton was not disclosed, and defendant's representation of "complete disclosure" pursuant to the rules and absent written request or motion obviated the necessity of a written request or motion by the State.

Defendant's failure to disclose Mrs. Burton in the course of his "complete disclosure" was a failure to comply with Rule 25.-34(A)(2), V.A.M.R., requiring a defendant to disclose all persons whom defendant intends to call as witnesses. Rule 25.45, V.A.M.R., provides that if a party fails to disclose a witness in violation of the applicable discovery rule, the court may, among other things, "exclude such evidence * * *"; and in such circumstances the court will not be deemed guilty of an abuse of discretion in its refusal to permit the undisclosed witness to testify. *State v. Wolfe*, 542 P.2d 482, 485 (Or.1975); *State v. Talley*, 112 Ariz. 268, 540 P.2d 1249, 1251 (banc 1975); *State v. Scott*, 24 Ariz.App. 203, 537 P.2d 40, 42 (1975).

Appellant contends (II) that Section 552.-030.7, RSMo 1969, "provides an unconstitutional shift of burden of proof from plaintiff to defendant, in that the statute requires defendant to overcome a presumption against mental illness or defect by a preponderance of the evidence, although the requirements of due process are that once a defense of mental illness or defect is asserted, the burden is upon the plaintiff to prove its absence, as an element of the alleged offense, beyond reasonable doubt." Similarly, he contends (III) that the second paragraph of Instruction 8 and Instruction 9 are unconstitutionally defective as a shift of the burden of proof, for the reasons asserted in contention (II).

Section 552.030.7, supra, provides:

"All persons are presumed to be free of mental disease or defect excluding responsibility for their conduct, * * *. The issue of whether any person had a mental disease or defect excluding responsibility for his conduct is one for the jury to decide upon the introduction of substantial evidence of lack of such responsibility. But in the absence of such evidence the presumption shall be conclusive. Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall alone be sufficient to take that issue to the jury. The jury shall be in-

structed as to the existence and nature of such presumption when requested by the state and, where the issue of such responsibility is one for the jury to decide, the jury shall be told that the burden rests upon the accused to show by a preponderance or greater weight of the credible evidence that the defendant was suffering from a mental disease or defect excluding responsibility at the time of the conduct charged against him * * *."

Instruction No. 8 followed the pattern of MAI–CR 3.70 and in its second paragraph told the jury:

"The defendant is presumed to have been free of such a mental disease or defect at the time of the conduct charged against him. This presumption places upon the defendant the burden of proving by the greater weight of the credible evidence that he is not guilty by reason of such a mental disease or defect."

Instruction No. 9 followed the pattern of MAI–CR 2.33 and told the jury:

"If you find and believe from the evidence beyond a reasonable doubt that the defendant committed the conduct charged against him, you will then decide whether or not at that time he had a mental disease or defect excluding responsibility.

"If you find and believe by the greater weight of the credible evidence:

"First, that at the time of the conduct charged against the defendant he had a mental disease or defect, and

"Second, that as a result of it he did not know or appreciate the nature, quality or wrongfulness of his conduct, or that if he did, he was incapable of conforming his conduct to the requirements of law, then you must find the defendant not guilty by reason of mental disease or defect excluding responsibility."

This appeal was filed originally in the Supreme Court on appellant's assertion that contentions II and III involved construction of the Constitution of the United States or of this state under Missouri Constitution, Article V, Section 3. The Supreme Court ordered the appeal "transferred to court of appeals, Kansas City district, in which jurisdiction is vested"; and appellant recognizes "there having been a specific judicial determination, the question has been adjudicated * * *."

If such were not the case and a true constitutional question was presented, this court would not have jurisdiction of this appeal. *State ex rel. Martin v. XLNT Corporation,* 525 S.W.2d 616, 620–621 (Mo.App. 1975); *State v. Holley,* 488 S.W.2d 925, 927 (Mo.App.1972). Similarly, the Supreme Court has mandated the use of Instructions 8 and 9 in this case, and this court has no power to declare erroneous pattern criminal instructions contained in MAI–CR. Rule 20.02, V.A.M.R.; *State v. Gilyard,* 523 S.W.2d 564–568 (Mo.App.1975); *State v. Yeokum,* 516 S.W.2d 535, 536–537 (Mo.App. 1974).

▆ It should be noted also that the first assertion of constitutional shortcomings of Section 552.030.7 occurred in defendant's motion for new trial; and in order to preserve for appellate review a constitutional issue, it must be raised at the earliest time consistent with good pleading and orderly procedure. *State v. Flynn,* 519 S.W.2d 10, 12 (Mo.1975).

▆ Finally, there is no constitutional requirement that the State bear the burden of proving the sanity of a defendant in a criminal prosecution. See *Leland v. State of Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), which upheld a statute which required the defendant who relied on a defense of mental disease or defect to prove beyond a reasonable doubt that he was so suffering at the time of the commission of the offense. *Davis v. United States,* 160 U.S. 469, 484, 16 S.Ct. 353, 40 L.Ed. 499 (1895), cited by appellant, does not require a contrary result because that decision "obviously establishes no constitutional doctrine, but only the rule to be followed in federal

courts." [1] 343 U.S. l. c. 797, 1002; *State v. Holmes,* 439 S.W.2d 518, 521 (Mo.1969).

▪ Appellant contends (IV) that the State failed to disclose or failed to use due diligence to obtain and furnish to defendant results of a Sentence Completion Test and the Minnesota Multiphasic Personality Inventory in violation of its duty under Rules 25.32 and 25.33, and he was thus denied due process with respect to cross-examination of Dr. Richard K. Jacks; (VIII) that Doctor Jacks incorrectly interpreted the MMPI administered to defendant at Fulton State Hospital, and that he thus "testified falsely" to a material fact so as to require a new trial; and (IX) that his after-trial acquisition of the MMPI results constitutes "newly discovered evidence" which "probably would have produced a different result on new trial."

Defendant's motion for disclosure requested the State to disclose, among other things, "[a]ny report or statements of experts, made in connection with this cause, including the results of physical or mental examinations and of scientific tests * * of the defendant * * * and * * * [a]ny material or information within the possession or control of the state, which tends to negate the guilt of the defendant * * * mitigate the degree of the offense * * * reduce the punishment * * *."

In compliance, the State furnished a handwritten response naming Dr. Jose Raphael of St. Joseph State Hospital and Dr. Richard K. Jacks of Fulton State Hospital as rebuttal witnesses, and a 6-page typewritten report of psychiatric examination at Fulton State Hospital of defendant pursuant to Chapter 552, RSMo 1969, signed by Richard K. Jacks, D.O., Clinical Director. The report described pertinent history; physical status; mental status, covering among other things "Psychological Testing" by a "battery of tests," including "the MMPI"; course in hospital; condition at present; diagnosis of "No Mental Disorder within the meaning of Chapter 552"; dis-

cussion; findings, among others, of no mental disease or defect within the meaning of Section 552.010; and recommendation that he be returned to court for trial. Despite this disclosure to defendant, particularly that MMPI tests had been administered, there was no further pretrial request for particular test results, no complaint before trial of any failure of the State to disclose, and no objection at trial of any failure to disclose. The record shows also that defendant cross-examined Doctor Jacks extensively and to the extent of showing that Doctor Jacks was aware that defendant was "out-of-norm" on the MMPI in but two categories when he was actually out-of-norm in several categories.

It is thus shown that the State disclosed, and defendant was apprised of, the existence of the MMPI test, and that defendant was prepared to meet Doctor Jacks on that issue. Accordingly, it may not be said that defendant was deprived of the opportunity on that account to prepare in advance of trial for cross-examination of State's witness Jacks. Cf. *State v. Buckner,* 526 S.W.2d 387 (Mo.App.1975), where, in response to defendant's motion for disclosure, State's disclosure of an unsigned statement of its witness did not excuse its failure to disclose existence of a written statement of the witness.

Dr. Richard K. Jacks, in rebuttal of defendant's plea of not guilty by reason of mental disease or defect, gave his opinion, as he did in his report, that defendant was not suffering from mental disease or defect at the time of the offense. Upon cross-examination, Doctor Jacks conceded reliance in part on psychological tests, including MMPI, given defendant by clinical psychologists, and stated that a summary of MMPI results given to him showed that defendant tested in abnormal ranges on two of the test's twelve scales. Defendant showed by his psychologists, Dr. Kenneth West and David Dawson, that defendant scored in

---

1. Cf. 64 Georgetown Law Journal 871, 890 (1976), which suggests that *Leland v. State of Oregon* should be repudiated.

abnormal ranges on eight of eleven scales of the MMPI test.

These circumstances show that Doctor Jacks was inaccurate or mistaken in his understanding of the MMPI test results; they do not show that he testified falsely as to constitute perjury. Appellant concedes that he "do[es] not suggest that Dr. Jacks perjured himself * * * but merely that he testified falsely." The inaccuracy was raised by defendant's cross-examination of Dr. Jacks, was corrected beyond question by witnesses West and Dawson, and Doctor Jacks clarified that his opinion was not changed by the inaccuracy of his information on MMPI test results. In his words, such tests are "more or less like a laboratory test, giving you certain information, but * * * cannot make a diagnosis in itself." Inaccurate testimony given by a witness against a defendant does not entitle him to a new trial; it must be shown that the state knowingly used perjured testimony or failed to correct testimony it knew to be deliberately false. *Tyler v. State,* 501 S.W.2d 189, 190–191 (Mo.App.1973).

Nor is there anything with respect to the MMPI and sentence completion test results to call for a new trial to defendant on his assertion of "newly-discovered evidence." In order for an appellant to secure a new trial on the ground of newly-discovered evidence, the evidence must have come to his knowledge since the trial; he must not be guilty of a lack of diligence in discovering it; it must be material and probably produce a different result on a new trial; it must not be merely cumulative; and its object must not be to impeach the character or credit of a witness. *State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.,* 381 S.W.2d 20, 25 (Mo.App.1964); *State v. Hurd,* 520 S.W.2d 158, 165 (Mo.App.1975). As previously demonstrated, defendant was advised before trial that psychological tests including the MMPI had been given him and were considered in his psychiatric evaluation; he became aware of the inaccuracy of Doctor Jacks's evaluation of the tests at trial; his own witnesses, Doctor West and David Dawson, had administered such tests to defendant; he cross-examined Doctor Jacks with respect to inaccuracies; and the admission of. inaccuracy was obtained from Doctor Jacks and utilized for purposes of discrediting his expert opinion at trial.

Appellant contends (V) that the court erred in denying evidence from the Circuit Clerk of Holt County that defendant had previously tendered a plea of not guilty by reason of mental illness or defect to a charge of kidnapping arising out of occurrences June 17, 1974, "and after hearing, the plea was accepted and defendant found to be suffering from mental illness or defect." He argues that this evidence "would have tended to show the jury that defendant has been adjudicated to be suffering from mental illness or defect at a point in time closely related to the incident for which he was being tried in this case and tended to prove his defense of acute schizophrenic episode, a mental illness excluding criminal responsibility." He argues also that the error of the denial of the evidence was compounded by evidence adduced by cross-examination of defendant that he had been charged with a crime in Holt County prior to visiting Doctor Cox, a psychiatrist, and the denial to defendant upon redirect examination of evidence of the disposition of the kidnapping charge in Holt County.

Section 552.030.2, RSMo 1969, provides:

" * * * The state may accept a defense of mental disease or defect excluding responsibility * * * if the defendant has no other defense and files a written notice to that effect. Upon the state's acceptance of the defense of mental disease or defect excluding responsibility, the court shall proceed to order the commitment of the defendant as provided in section 552.040 * * *."

The State's acceptance in Holt County of defendant's plea of not guilty by reason of mental disease or defect for the offense alleged to have been committed on June 17, 1974, did not establish that defendant was suffering from mental disease or defect on that date. Under the statute, such acceptance simply mandated that the

court order the defendant committed to the Director of the Division of Mental Diseases for further proceedings. It did not constitute an adjudication of defendant's mental condition on June 17, 1974, as characterized by appellant; and it had no bearing on his mental condition on July 25, 1974, when he committed rape in Buchanan County. *State v. Walden,* 490 S.W.2d 391, 393 (Mo. App.1973); *State v. Clemmons,* 460 S.W.2d 541, 545 (Mo.1970).

█ The difficulty in the second part of appellant's argument is that defendant elicited evidence of the kidnapping, and the victim was called as a witness in his behalf. Accordingly, it may not be said that the cross-examination of defendant on that score was erroneously permitted, and it could not have compounded an alleged error now demonstrated to be nonexistent.

Appellant contends (VI) that the court erred in permitting the State "to inquire of rebuttal witnesses, Drs. Nicholas Bartulica and Jose Raphael, hypothetical propositions which were incomplete and without foundation as a matter of law and the evidence."

█ The record shows that Doctor Bartulica is a psychiatrist and assistant superintendent of St. Joseph State Hospital, and that Doctor Raphael is a medical doctor and staff psychiatrist at St. Joseph State Hospital. Their qualifications were not questioned. The record also shows that the questions to them were not hypothetical, but called only for their expert opinions, based on their observations of defendant, whether he suffered from mental disease or defect excluding responsibility for the rape he committed July 25, 1974. Such opinions may be based on the expert's own observation, *Smarr v. Smarr,* 319 Mo. 1153, 6 S.W.2d 860, 865 (1928); and when the expert has personal observation, hypothetical questions are unnecessary to obtaining his opinion, *De Donato v. Wells,* 328 Mo. 488, 41 S.W.2d 184, 187 (1931).

█ Appellant contends (VII) that the court erred in overruling defendant's verified motion to disqualify the prosecuting and assistant prosecuting attorneys on grounds of bias and prejudice.

Defendant's Application to Disqualify Prosecuting Attorney, "pursuant to VAMR 56.110," verified by affidavit of counsel, asserted as grounds:

"That Richard A. Heider, duly elected and qualified prosecuting attorney of Buchanan County, Missouri, and Cynthia Clark, his duly appointed assistant prosecuting attorney, have such a personal interest in the prosecution of these causes as to indicate that they might be influenced thereby and not be fair to defendant in the trial of these cases. * * *

"That the interest * * * is a lack of quasi-judicial attitude toward these cases, but a personal interest in achieving a conviction, regardless of merits; and that said interest is evidenced by the statements of said assistant prosecuting attorney made to the press and appearing on page 7A of the St. Joseph News-Press of Thursday, 20 February, 1975, * * *

"That the statements * * * were designed to inform the public at large of the opinion of the prosecuting attorney in the cause, his and her disbelief in the merit of the defense expected to be raised by defendant, and resulted in an appearance of professional misconduct by counsel for defendant in the text of said news release which purported to quote statements made by counsel to the media, when counsel has made no statements whatsoever to the media."

The news article in question under heading "Burton to Stand Trial for Rape," indicated that Judge Connett had ordered defendant returned to Buchanan County from Fulton State Hospital to stand trial on a forcible rape charge. The article stated further:

"* * * Assistant Prosecutor Cindy Clark, who requested today's order, said she has information indicating Burton is mentally able to stand trial here. * *

"Burton also is charged with felonious assault. Assistant Prosecutor Clark said she would ask that he be tried on this charge in April * * *."

Section 56.110, RSMo 1969, provides:

"If the prosecuting attorney and assistant prosecuting attorney be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his office, or shall be related to the defendant in any criminal prosecution, either by blood or by marriage, the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause."

The statements attributed to Ms. Clark in the news article are not indicative of the type interest to have authorized the court to appoint some other attorney in her stead to prosecute the case. There is no suggestion in the article that she was acting overzealously, with a personal interest, or in relationship which would bring her conduct within the ambit of the statute. Compare the need for disqualification in *State v. Jones*, 306 Mo. 437, 268 S.W. 83, 85 (Mo. 1924), where the prosecuting attorney prosecuted a charge involving an automobile collision in which his car had been one of the vehicles and he was the principal State's witness; *State v. Nicholson*, 7 S.W.2d 375, 378 (Mo.App.1928), where the prosecutor accompanied the sheriff in execution of a search warrant, testified against defendant, and otherwise conducted himself to the defendant's prejudice; *State v. Burns*, 322 S.W.2d 736, 741–742 (Mo.1959), where one of the prosecutors previously had represented the defendant on the same charge for which he was ultimately convicted.

■ Appellant argues, "there having been no proffer of contradictory evidence, the application to disqualify * * * should stand proved."

The unchallenged verified application to disqualify the prosecuting attorney did not, alone, require the court to sustain it. The absence of a counteraffidavit to defendant's affidavit operated only as a waiver of objections the State may have had to the affidavit, and the uncontradicted affidavit made only a *prima facie* showing of its contents for consideration by the court. *State v. Hurd*, supra, 520 S.W.2d l. c. 164.

It already has been demonstrated that the motion, its contents, and accompanying affidavit presented no case under the statute and authorities for replacement of the prosecuting attorney and his assistant.

■ Appellant contends (X) that his foregoing contentions IV, VII, VIII, and IX stand admitted by respondent "as to all factual matters set out therein, and they are not subject to attack in the absence of counter-affidavits in the trial court." He asserts that he verified his motion for new trial, and "it stands admitted, therefore, (a) that plaintiff withheld or did not use due diligence to obtain and furnish material evidence; (b) that the prosecuting attorney and his trial assistant were disqualified from prosecuting the cause; (c) that Dr. Richard K. Jacks testified falsely to a major material fact; and (d) that the evidence of false testimony is newly discovered."

This contention does not present anything for appellate review because it does not state what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. Rules 28.18 and 84.04, V.A.M.R. The substance of appellant's conclusions (a), (b), (c), and (d) has been considered on the merits under appellant's contentions IV, VII, VIII, and IX, supra, and counsel's verification does not alter the rulings. See *Glasser v. United States*, 315 U.S. 60, 87, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Blodgett v. United States*, 161 F.2d 47, 56, n. 4 (8th Cir. 1947).

Judgment affirmed.

All concur.