**STATE of Missouri, Respondent,**

v.

**Carl Dennis SIMS and Bill Gene Magruder, Defendants.**

**No. 51099.**

Supreme Court of Missouri,

Division No. 1.

Nov. 8, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Charles C. Hatley, Asst. Atty. Gen., New Madrid, for respondent.

Hale Brown, Kirkwood, Theodore Schwartz, Clayton, for defendants.

HYDE, Presiding Judge.

Defendants were jointly charged and tried for burglary, second degree, and stealing, under the habitual criminal statute. Secs. 560.070, 560.095, 560.110, 560.156, 556.-280; statutory references are to RSMo and V.A.M.S. Defendants were found guilty by the jury and sentenced by the court to imprisonment of seven years for burglary and three years for stealing to run consecutively, and have appealed.

■ Defendants had separate counsel, employed by them, on arraignment, at the trial and at sentencing, who filed motions for new trial and perfected appeal, the transcript being paid for by defendants. However, no brief has been filed here so we consider all assignments in the motions for new trial in accordance with Criminal Rule 27.20. (See also Rule 28.02, V.A.M.R.) Since the defendants were tried jointly and the assignments made in the separate motions for new trial by each defendant apply equally to the other, we rule all of them as applicable to both.

Defendants were found inside the building of the Dolly Madison Cake Company by officers of the St. Louis County Police Department about 4:25 A.M., March 24, 1963. The police had been called by Thomas H. Patterson, an employee of the Southwestern Bell Telephone Company, who saw the defendants enter. Patterson was in the Telephone Building, south of the Cake Company building (there being a parking lot between the two buildings) when he heard a car door slam. Looking out a window,

he saw a car on the side street, west of the parking lot, and saw two figures standing by the car. He said the men "walked up the street, jumped a fence" and went up to the front door of Cake Company building on the parking lot, "the main entrance to the store part of the building." Patterson said: "[A]bout the time they reached the door there was a car coming south on Woodson Road so they ran to the back of the building, back along here to the fence again, and after the car passed they came back to the door and went in." Woodson Road was on the east side of the two buildings.

Mrs. Lena Helton, Clerk of the Cake Company, closed the store at 7:00 P.M. on March 23, 1963, checked all doors and left after all were locked. She put about $48.00 (tens and ones) under the counter. When the police came, all doors were found locked and Donald E. Marshall, the Division Manager of the Cake Company, was called to come and let them in. They found defendants in the garage part of the building behind the store. They also found a crowbar, a screwdriver and a flashlight there and $64.85 in currency and coin was taken from defendant Sims, including four ten dollar bills and nineteen ones. Defendant Magruder was found to have $2.55. There was no money under the counter; also missing was a roll of postage stamps from the manager's desk and a roll of stamps was found on a truck in the garage where defendants were arrested. There were tool marks on the jamb of the door to the store and there was testimony that this door (made of aluminum) could be opened and locked again with the crowbar and screwdriver. Photographs in evidence showed the condition of the store and the manager's office at the time the police came.

Defendants' testimony was that they and Donald Steinhoff were at Sims' house until about 1:00 A.M. and left in Steinhoff's car, going to a restaurant; that afterwards they had trouble with the car and finally left it and Steinhoff to go to Sims' brother's house when a policeman of St. Ann they

knew came up and told them it was too late to be on the streets; that they jumped the fence by the Cake Company parking lot when they saw a car they thought was the car of the policeman who had spoken to them; and that when they came to the Cake Company building they saw lights on the inside of the store, an "open" sign in the window and the door partly open. Sims testified that he "just opened the door," "hollered, asked if anyone was in there" and "looked for a telephone," to call his brother. Defendants had gloves (which would prevent leaving fingerprints) when arrested but Sims explained this saying that he used jersey gloves in his work; that he had two pair, one of which he had loaned Magruder, to wear gloves pushing the Steinhoff car. Sims further testified that the money taken from him was money he had earned working. Magruder testified that he and Sims went to the south door of the bakery in question which was slightly open; that he and Sims went in to make a telephone call; that the door closed behind him and about that time a police car pulled up and when defendants heard police cars coming into the parking lot, they went into the garage so they would not be seen. Magruder said he and Sims waited in the garage for about forty-five minutes until the police came in and arrested them. Defendants denied that the crowbar, screwdriver and flashlight were theirs.

Steinhoff testified that he, Sims and Magruder left Carl Sims' house after midnight in Steinhoff's car, stopped at an all-night restaurant, and after leaving the restaurant had car trouble; that Sims and Magruder pushed the car, got it started but the car later quit and that Sims and Magruder left walking to go over to Sims' brother's house to get help; that after Sims and Magruder had been gone ten or fifteen minutes the car started and he drove on to pick them up; and that he was picked up by the police who put him in the police car and took him back down to the Dolly Madison store where they had Sims and Magruder inside.

■ Defendants allege error in refusing to sustain their motions for acquittal at the close of all the evidence on the ground that there was no evidence to show the Interstate Baking Company, a corporation, was the owner of the money alleged to have been taken or was the owner of the Dolly Madison Cake Company. The information alleged breaking into a building, "the property of the Interstate Baking Company, a corporation, doing business as Dolly Madison Cake Company," with intent to steal and did steal money, "the property of said Interstate Baking Company, a corporation, doing business as Dolly Madison Cake Company." It is also claimed that the evidence was insufficient to show a breaking or entering by either of the defendants or that the money found on Sims belonged to anyone other than himself. There is no merit in these contentions; as to the latter witness Helton testified that the money she put under the counter when she left was the property of the Dolly Madison Cake Company. This money was missing and money in the same denominations was found on Sims. Likewise, the postage stamps from the manager's desk were found in the garage near defendants. The facts shown by the evidence, hereinabove stated, are sufficient to show breaking and entering by defendants with intent to steal and stealing. In this connection error is assigned in admitting testimony of Captain Fred J. Vasel of the St. Louis County Police Department "that no money was found in a box in the office adjoining the room wherein defendants were arrested." No reason is given for this assignment and since this testimony showed that after defendants had entered there was no money in the place where Mrs. Helton had left it, we hold this testimony was properly admitted.

■ Defendants' contention concerning failure to show status or ownership of the Interstate Baking Company likewise is without merit. Some of our early cases did make strict requirements in this regard but they were overruled by State v. Carson, 323 Mo. 46, 18 S.W.2d 457, 461. In that

case, we said the statute of jeofails was ignored in the earlier case (then 3908 RS 1919, later 545.030, now Rule 24.11) and held on a charge of selling property mortgaged to a bank that the defendant "is fully informed of the 'nature and cause of the accusation' without any specific description of the mortgagee incidentally affected." This principle has been applied in many subsequent cases. In State v. Latham, 344 Mo. 74, 124 S.W.2d 1089, 1090, the information only stated property was stolen from "Eggers' Garage" and we cited Sec. 3652 RS 1929, later Sec. 546.080, now Rule 26.04, stating in part as follows: "Whenever on the trial of any felony or misdemeanor, there shall appear to be any variance between the statement in the indictment or information and the evidence offered in proof thereof, in the christian name or surname * * * or other description of any person whatsoever of any person whomsoever therein named or described * * * or in the ownership of any property named or described therein, such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant." We affirmed conviction ruling "that said court did not find that the omission from the information of an allegation that Eggers' Garage was a corporation, or if a copartnership an allegation of that fact and the names of the partners, was material to the merits of the case or prejudicial to the defense of the defendant." As we said in State v. Hedgpeth, 311 Mo. 452, 278 S.W. 740, 741: "Proof of the appellant's guilt of the crimes charged, or either of them, did not depend upon establishing the fact of the oil company's incorporation, but upon the question as to whether the appellant feloniously broke into the premises of another, and, to establish the larceny, that he stole from such premises the property described in the charge. While the corporate existence of the oil company was alleged in the information, it was a mere matter of description to enable the owner to be more readily identified. Whether, therefore, the owner of the premises be a corporation, a partnership, or an individual is not material to the appellant's defense or in the establishment of his guilt." See also State v. Parker, 324 Mo. 734, 24 S.W.2d 1023; State v. Dowling, 360 Mo. 746, 230 S.W.2d 691; State v. Stubblefield, Mo.Sup., 248 S.W.2d 665; State v. Zammar, Mo.Sup., 305 S.W.2d 441; State v. Stuver, Mo.Sup., 360 S.W.2d 89. Likewise, defendants' guilt of the crimes charged in this case did not depend on establishing that "Interstate Baking Company, a corporation, doing business as Dolly Madison Cake Co." was a corporation owning Dolly Madison Cake Company, as a subsidiary corporation, whether it was a division or department of the Baking Company or whether that designation was used as a trade name. Mr. Marshall testified that he was the "Division Manager of Dolly Madison Cake Co." at its store at 3507 Woodson Road; that its building was entered and that the missing money was its property. We hold his testimony and the other proof was sufficient to prove defendants "feloniously broke into the premises of another and to establish larceny" and under Rules 24.11 and 26.04 to sustain their conviction.

■ Error is assigned in the admission of photographs showing defendants at the time and place of their arrest, showing the store room and the office of manager Marshall in a state of disarray and showing the door leading to the office adjoining the room where defendants were arrested. These photographs were taken by one of the police officers that night and there was testimony that they fairly and accurately showed the conditions, objects and persons as they were at the time they were taken. Admission of photographs is mainly within the sound discretion of the trial court and are properly admitted when helpful to show relevant facts. State v. Smith, Mo.Sup., 240 S.W.2d 671, 675; State v. Morris, Mo. Sup., 248 S.W.2d 847, 849; State v. Brown, Mo.Sup., 312 S.W.2d 818, 822; State v.

Anderson, Mo.Sup., 375 S.W.2d 116, 121. We hold there was no error in admitting these photographs in evidence.

■ Error is assigned in the admission in evidence of the crowbar and screwdriver found in the garage near defendants when they were arrested. The Cake Company manager testified these were not its property. Defendants' ground stated in the motion is that "the chain of possession of the property had not been established from the time of the seizure thereof." These articles were taken into custody by Detective Tinkham who found them on the garage floor at the time of defendants' arrest. He took pictures to show the position in which they were found. Tinkham identified these articles at the trial. He said he put these articles and others in envelopes, sealed the envelopes and gave them "to the custodian of our evidence locker where they were placed in our vault." He also said that such envelopes would be initialed. We hold there was sufficient identification to authorize the admission of these articles. See State v. Pruett, Mo.Sup., 342 S.W.2d 943, 945, and cases cited; State v. Summers, Mo. Sup., 362 S.W.2d 537, 540; State v. Maxwell, Mo.Sup., 376 S.W.2d 170, 174; see also State v. Lindner, Mo.Sup., 282 S.W.2d 547, 552. For the same reasons, we overrule the claim of error in the admission of the roll of postage stamps.

■ Error is assigned in admitting testimony of Captain Vasel (1) that he had been called to the premises on a report that a burglary was in process; (2) that the premises were "obviously broken into"; and (3) that the crowbar and screwdriver could have been used to open the front door. As to 1, the reference to burglary was in a question which was not answered. The question was withdrawn on objection being made and no action by the court of any kind was asked by counsel for either defendant. As to 2, the word objected to (which was "obvious") was stricken and request for a mistrial denied. We find no abuse of discretion in that ruling. As to 3, Captain Vasel described the locking mechanism of the aluminum front door of the Cake Company store as a bolt that protrudes from the door into the jamb and could be unlocked by a key from either inside or outside. He testified that he had been in the police department 13 years; that the offense of burglary came under the division he commanded; and that he was familiar with the use and operation of burglar tools generally. He then was asked whether the crowbar and screwdriver in evidence could be used to open a locked door of the type on the Cake Company building. Objection was on the ground that the question called for conjecture, invaded the province of the jury and that the witness had not been qualified as an expert "to determine the usage of tools of this nature." After an affirmative answer, Captain Vasel was asked to demonstrate how it could be done but objection to a demonstration was sustained; but he was permitted to say the door could be locked again with the same tools. "[T]he determination of whether a witness is qualified to give particular testimony rests largely within the discretion of the trial court, although such determination is reviewable for abuse." Davis v. Gatewood, Mo.Sup., 299 S.W.2d 504, 511. See also State v. Terry, Mo.Sup., 325 S.W.2d 1; State v. Menard, Mo.Sup., 331 S.W.2d 521; in State v. Turnbough, Mo.Sup., 388 S.W.2d 781, 786, in which a fire chief was permitted "to testify as to the origin of the fire and the intensity of the heat" we said: "The court has a wide discretion in determining the admissibility of opinion evidence of this kind, and no abuse of discretion is shown by the record." See also State v. Brown, Mo.Sup., 291 S.W.2d 615, 619, in which we held it proper to admit the opinion of a police department laboratory officer as to whether marks on window sash and door of burglarized building were made by crowbars and screwdrivers found in truck driven by defendant. While the State might well have shown in more detail Captain Vasel's experience, this was a rather simple mechanical operation (prying the bolt of the lock away from the slot in the door jamb) and

we cannot find any abuse of discretion in admitting this testimony.

■ Error is assigned for not permitting Sims to testify to what Officer Hauserman of St. Ann said to him after Steinhoff's car stalled. Sims was permitted to say the officer told him, "It's too late to be on the streets and get out of there." Objection to further conversation with this officer as hearsay was sustained and we think properly. Defendants' theory was that they thought cars they saw later and attempted to evade were this officer's car and that they were trying to keep away from him when they went to the Cake Company building. Their version of their actions was fully presented to the jury and we find no merit in this assignment.

■ Defendants make several assignments concerning the instructions. Assignments that there was not sufficient evidence to support giving Instruction No. 1 submitting burglary, Instruction No. 2 submitting burglary and stealing, Instruction No. 3 submitting stealing, are obviously without merit from the facts hereinabove stated as shown by the evidence. This is also true as to Instruction 4, concerning persons acting jointly being equally guilty, of the claim there was not sufficient evidence that a crime was committed by either.

■ Instruction No. 1 is criticised for stating "no particular amount of force is necessary" to constitute breaking and entering, as being inconsistent with requiring a breaking and entering and as constituting a comment on the evidence. As to force see State v. Fritz, Mo.Sup., 379 S.W.2d 589, 590, and cases cited. These contentions are without merit.

■ Instruction No. 2 is criticised as referring to the corporate entity by using the term "its property" in defining stealing and says this constitutes a comment on the evidence. Apparently this refers to defendants' contention concerning the allegation in the information that the property belonged to "Interstate Baking Company, a corporation, doing business as Dolly Madison Cake Company," and that some further proof was necessary to more definitely show the corporate status. We have already ruled that such proof was not an essential element of the State's case and therefore overrule this claim concerning Instruction No. 2. A further criticism of this instruction is its direction "the moving of property alleged to have been stolen from the place where it was before, however slight, is sufficient to constitute stealing." It is said this overlooks accidental or unintentional moving. However, this instruction clearly requires a finding of "felonious intent at the time to convert the same to their own use and to permanently deprive the owner of the use thereof without its consent." Defendants' claims of error against this instruction cannot be sustained.

■ Instruction No. 4 is criticised as vague and indefinite, as a comment on the evidence and as failing to require a finding of guilt of either or both defendants beyond a reasonable doubt. This instruction was as follows: "All persons are equally guilty who act together with a common intent in the commission of a crime, and a crime committed by two or more persons acting jointly, is the act of all and of each one so acting." This was not a verdict-directing instruction but only a statement of a properly applicable principle under the evidence. See Raymond Missouri Instructions, Secs. 3471–3479, and cases cited. We hold there was no prejudicial error in giving this instruction.

■ Instructions 5 and 6 are criticised as permitting the presumption of inno-

**452**

cence to be overcome prior to the conclusion of the entire case by No. 5 concerning proof of intent; and of replacing the standard of "reasonable doubt" with a more difficult standard for the jury to understand by No. 6 stating a doubt to authorize acquittal ought to be a "substantial one." As to No. 5, see Raymond Missouri Instructions, Sec. 3716; as to No. 6 see Raymond, Secs. 3732–3734, 3784–3792, 3800–3809, and cases cited. Considering, as we should, these instructions together with the requirements of the other instructions given, we hold there was no prejudicial error in giving these instructions. Error is also claimed in refusing offered Instruction A concerning "conviction of the defendant on circumstantial evidence alone." The court refused this instruction on the authority of State v. Loston, Mo. Sup., 234 S.W.2d 535, 538, on the ground that part of the State's evidence was direct. See also State v. Ybarra, Mo.Sup., 386 S.W. 2d 384, 386; State v. Tallie, Mo.Sup., 380 S.W.2d 425, 429; State v. Cox, Mo.Sup., 352 S.W.2d 665, 670. We hold the court properly refused Instruction A.

Other assignments concern the oral argument during which the court admonished defendants' counsel for remarks concerning expected punishment (stating the maximum) if defendants were found guilty and in failing to declare a mistrial when the prosecuting attorney thereafter stated his recommendation would be the maximum. Since the habitual criminal statute applied, the jury had no function as to punishment and the statement of the prosecuting attorney was retaliatory to the remarks of defendants' counsel concerning it. We have read the entire argument carefully and find no prejudicial error in the court's rulings. We have examined the record as required by our Rules 28.02 and 28.08, V.A.M.R., and find it sufficient with respect to those matters therein specified.

The judgment is affirmed.

All concur.