STATE of Missouri, Plaintiff-Respondent,

v.

Henry DRAKE, Defendant-Appellant.

No. 9528.

Missouri Court of Appeals, Springfield District.

Sept. 30, 1974.

**654**

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Spec. Asst. Atty. Gen., St. Louis, David Robards, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Robert W. Richart, Joplin, Douglas, Douglas & Douglas, Neosho, for defendant-appellant.

TITUS, Judge.

A Newton County jury convicted Henry Drake of felonious stealing (§§ 560.156 and 560.161 RSMo 1969 V.A.M.S.) but failed to agree upon the punishment to be inflicted. Pursuant to Rule 27.03, V.A.M.R., the court assessed the punishment and sentenced Drake to four years' imprisonment. Defendant has appealed.

### I.

Defendant's first point relied on is his claim that the trial court "erred in allowing the assertion of the Prosecuting Attorney that Mr. Drake had been convicted of a crime when (1) there had been no conviction of a crime and when (2) such a prejudicial statement could not be recalled

from the minds of the jurors regardless of the Court's instructions."

Defendant took the witness stand in his own defense. On direct examination he was asked: "Have you ever been convicted of a crime before?" Defendant answered: "No." On cross-examination the following occurred: "Q. Now, Mr. Drake, you were convicted of a crime involving interstate commerce and paid a hundred dollar fine, isn't that correct? [Defense counsel]: That is not a criminal offense. [The court]: Overruled. [Defense counsel]: I want to be heard outside the hearing of the jury on this." The request was granted and an off-the-record conference was held outside the hearing of the jury.[1] Following this, the trial court instructed: "The jury will disregard the question asked by [the prosecuting attorney], and you will not consider such question in connection in arriving at your verdict. You will disregard the question completely." The matter was never again alluded to or mentioned; defendant did not move for a mistrial or seek relief in addition to that applied by the court in its charge.[2]

■ The trial court's instruction to the jury to disregard the state's unanswered question and not to consider it in arriving at a verdict, apparently satisfied the defendant's requirements at that time. In the absence of a request for any further relief, the matter is not now available to defendant on appeal [State v. Crider, 419 S.W.2d 13, 15 [6] (Mo.1967)] and precludes the conclusion that the trial court's action affords any basis for a new trial. State v. Jackson, 511 S.W.2d 771, 775 [4] (Mo. 1974).

## II.

The second point relied on by defendant: "The court erred, and the Defendant was denied a fair trial, when the changed testimony of Charles Long regarding the weight of the [stolen] hogs was known by the Prosecuting Attorney to be false and yet the same was accepted into evidence by the court."

■ This point actually preserves nothing for appellate review because it cannot be understood without resorting to the argument portion of defendant's briefs, which is something an appellate court is not required to do. State v. Mitchell, 500 S.W.2d 320, 323 [3] (Mo.App.1973). Nevertheless, when the argument section of the brief is conned and the transcript is read, defendant's complaint is *not* that the trial court permitted introduction of the so-called changed testimony over any objection of the defendant when it was offered, but rather that the trial court did not grant defendant a new trial on the basis of his motion for a new trial and testimony adduced in relation thereto.

When Charles Long, an employee of the averred victim, was first called by the state he was asked to put "a minimum value" on the 130 hogs allegedly stolen from Armour and Company on the occasion in question. He testified: " . . . the only thing I could tell you is that the hogs left in the building at that time were from 100 to 170 pounds. . . . I would assume a 100 pound hog would bring $35.-00." A witness who purchased 85 head of the allegedly stolen hogs from defendant related that they had an average weight of "176 pounds"; this prompted the state to recall Mr. Long to "tie down the weight of the hogs that were taken." The state asked: " . . . can you give . . . your opinion as to the average weight of the missing hogs?" Defendant's objection to Mr. Long's attempt to "guess" at the weight was sustained whereupon Long replied: "We didn't have a chance to weigh the missing hogs, but they would weigh or would have weighed the same as the ones that were still there and which we moved." The first and only question

---

1. The transcript does not reveal what the alleged crime involving interstate commerce was or what transpired during the conference.

2. Whether or not the state had record support for its question concerning the alleged prior conviction is not an issue in this case.

propounded to Long by defendant's counsel on cross examination was: ". . . you said this morning that they weighed 100 to 125 pounds." Long answered: "No, I said 100 to 170 pounds. They weighed, I know, 100 pounds ranging on up to at least 170, and I would say more like 200 pounds, average 200 pounds. The load we took out the evening before the hogs came up missing was the smaller type hogs, and they averaged 100 to 170. . . . When you have 1700 head, you would have a variation of 188 to 200 pounds, and the hogs that were still there, not the ones that were missing or the ones we had moved out of there the night before averaged, I would say 200 pounds."

■ Defendant's motion for new trial averred that the first time Long testified he said *the hogs that were stolen* weighed between 100 and 125 pounds" (our emphasis), that after the purchaser-witness told the jury the hogs "averaged 175 pounds," a deputy sheriff approached Long in the courthouse hallway telling Long "that he would have to testify the hogs averaged 175 pounds," and although Long told bystanders that for him to so testify would be a "lie" he, nevertheless, returned to the witness stand a second time and so testified. At the hearings held on the motion, Betty Drake (defendant's wife), Ronnie Salzman (then currently charged with defendant for cattle theft) and Larry Cunningham (then on parole), testified in support of the motion. However, the mileage record and log maintained by the sheriff's office showed that the deputy. identified by defendant's witnesses as being the one who accosted Long in the hallway, was not in town at the time the conversation was said to have taken place, and the deputy and Long denied there was such a conversation or that they had ever seen one another before they testified at the hearings on defendant's motion for a new trial.

The burden was on defendant to prove his allegations for a new trial [Tucker v. State, 481 S.W.2d 10, 15 [8] (Mo.1972)],

and the trial court, better possessed than we to judge of the believability of the witnesses, had authority to pass on the credibility of the evidence presented pro and con upon the motion. State v. Coleman, 460 S.W.2d 719, 724 (Mo. banc 1970).

The first fault to be found with this portion of defendant's motion and brief is that a more careful reading of Long's testimony than defendant has given it, discloses that Long never testified the stolen hogs weighed 100 to 125 pounds. Such a claim can only be found in the question propounded by defendant's counsel which was denied by Mr. Long. As we read the transcript we detect no great variance, if any, between what Long testified to on the two occasions he was on the stand. The entire matter of the hogs weighing 100 to 125 pounds was born of a misstatement in the inquiry of defendant's lawyer and cannot be supported by anything which Long said. There was no suggestion at the hearings on the motion for new trial that the prosecuting attorney was aware that Long's testimony regarding weight was false, if indeed it was false, and in view of the evidence adduced to contradict the testimony offered to support the motion for new trial, we are in no position to hold that the court erred in overruling the motion on this point.

### III.

Point three in defendant's brief: "Failure of the State to prove ownership of the hogs in Armour and Company, a Corporation, by showing Armour and Company to be a corporation was a reversible error and was a vital part of the information that had to be proved by the State . . .."

The information charged defendant with feloniously stealing property "of Swine Production Division of Armour and Company, a corporation." The only evidence on the subject, unobjected to by defendant, was that the stolen hogs were owned by "Swine Production Division of Armour and Company." No proof was made that Armour and Company was a corporation.

■ "Whenever on the trial of any felony . . ., there shall appear to be any variance between the statement in the indictment or information and the evidence offered in proof thereof in the . . . description whatsoever of any person whomsoever therein named or described, or in the name or description of any matter or thing whatsoever therein named or described, or in the ownership of any property named or described therein, such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant." Rule 26.04. The fact the trial court overruled defendant's motion for judgment of acquittal, submitted the case to the jury, accepted the verdict and permitted it to stand by overruling defendant's motion for a new trial based upon its third point on appeal, permits us to conclude that the trial court did not find the state's omission to prove that Armour and Company was a corporation as alleged in the information was material to the merits of the case or prejudicial to the defense of the defendant. State v. Latham, 344 Mo. 74, 78, 124 S.W. 2d 1089, 1090 (1939).

■ " 'Steal' " when applied to property, means the felonious taking and carrying away of the personal goods of another [State v. Eye, 415 S.W.2d 729, 730 [2] (Mo.1967)], and if the proof shows the property was owned by someone other than the defendant, whether such owner was incorporated or unincorporated is a matter wholly collateral to the guilt of defendant. State v. Carson, 323 Mo. 46, 61, 18 S.W.2d 457, 462 (1929). Proof of defendant's guilt of the crime charged did not depend upon establishing the fact that Armour and Company was a corporation, but rather upon the question of whether he stole the property described in the information. Although the corporate existence of the company was alleged in the information, it was simply a matter of description to enable identification of the owner. Therefore, whether the owner of the stolen hogs was a corporation, a partnership or an individual was not material to defendant's defense or in the establishment of his guilt. State v. Jackson, 411 S.W.2d 129, 131 [5] (Mo.1967); State v. Sims, 395 S.W.2d 445, 449 (Mo.1965).

## IV.

Defendant's last point: "The court abused its discretion, and the Defendant was denied a fair trial, when, during the instructions the judge read the State's information to the jury, thereby adding weight to the charges and prejudicing the minds of the jurors."

■ To this defendant cites State v. Fenton, 499 S.W.2d 813 (Mo.App.1973), which has no relationship to defendant's final point whatsoever. Moreover, defendant's brief, in the argument portion thereof, is entirely devoid of any argument or discussion of the point save for the single abstract sentence that "Reading of the information by the Trial Judge places undue emphasis on the charge with an indication of the guilt of the Defendant." An assignment of error to which no applicable authority is cited and which is not argued in the brief, is deemed to have been waived or abandoned and preserves nothing for appellate review. Boland v. Dehn, 348 S. W.2d 603, 604 [1] (Mo.App.1961); Matthews v. Truxan Parts, Inc., 327 S.W.2d 28, 38 [11] (Mo.App.1959); Rule 84.04(e). In addition, to preserve an averred error for review by an appellate court, assertion of the claimed error in the brief must be based upon assertion of the claimed error and the relief sought at the time the alleged error occurred at the trial. State v. Woodard, 499 S.W.2d 553, 560 [13] (Mo. App.1973). There was no objection made by defendant or relief sought when the claimed error occurred. Therefore, the point has not been preserved for our consideration here.

Although defendant's last point is not to be reviewed because not properly saved, in fairness to the trial judge we observe that he at no time read the information itself or as such to the jury. His reference to the charge against defendant, wherein he paraphrased portions of the information, was not made during the instructions, as erroneously asserted in the point, but during preliminary explanatory remarks to the 26 veniremen before they were sworn for voir dire examination.

Augmenting the foregoing, as required by Rules 28.02 and 28.08, we have examined and found the information to be in proper form and sufficient. Defendant stood trial on his plea of not guilty, the jury's verdict was properly structured and responsive to the issues, punishment assessed by the trial court was in accordance with the law and within the range provided by statute, allocution was afforded defendant, and the judgment entered was proper. No error appearing, the judgment is affirmed.

HOGAN, C. J., and STONE, BILLINGS and FLANIGAN, JJ., concur.