STATE of Missouri, Plaintiff-Respondent,

v.

Robert Dean ANDERSON, Defendant-Appellant.

No. 10518.

Missouri Court of Appeals, Springfield District.

Aug. 11, 1977.

Rehearing Denied Sept. 1, 1977.

cept as true all evidence which tends to prove defendant's guilt and indulge all reasonable inferences favorable to the state. *State v. Potter*, 530 S.W.2d 268, 270[2] (Mo. App. 1975).

Briefly, the evidence was this: Near 9 p. m. on the day involved, an employee of a supermarket located across the street from the burglarized store observed a man in the market who was wearing a dark-colored stocking cap and carrying a transistor radio. A few minutes thereafter a market customer told the employee "she had seen somebody trying to get in that store . . . and asked us to call the police." The market employee immediately went to where he could see into the store which was illuminated with inside lights. The employee saw the same man previously seen in the supermarket trying to get out of the store by prying on its front and side doors with a pry bar. Following this the employee observed the stocking-capped man emerge from the side of the store pushing a power lawnmower. The capped man headed for the rear of the store premises to the vicinity of two parallel fences, one board and one wire. At about this time police arrived. They found a lawnmower and a Vaughn Superbar just inside the entrance between the two fences and discovered defendant trying to negotiate the area inclosed by the fences which was a veritable thicket overgrown with trees, weeds and vines. Defendant was bareheaded and carrying the back plate of a transistor radio. A dark brown stocking cap was found hanging on vegetation in the thicket. A search of the area revealed no unauthorized person but defendant on the premises. The police found all doors and windows to the store locked and summoned a store manager to obtain entrance. One of four glass panes (the bottom one) in the side door had been completely broken out. Most of the broken glass was inside the store on the floor. Fragments of the glass appeared to be stained with blood. Blood was seen on the handle of the lawnmower found at the fences. Defendant had blood and a cut on his hand. The lawnmower and pry bar were store property and had been removed

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Lloyd R. Henley, Springfield, for defendant-appellant.

TITUS, Judge.

Defendant was jury-convicted of second degree burglary and sentenced to two years' imprisonment. He appealed.

In determining defendant's first point, i.e., the sufficiency vel non of the evidence to sustain the conviction, we ac-

without authorization. The store had been closed and all the doors and windows had been locked at 5 p. m. Pry marks were found on the inside of the front and side doors. The opening made in the side door by the breaking of the bottom glass pane was large enough to permit the removal of the power mower through that opening.

■ Defendant argues that there was insufficient evidence of a breaking *in* and that the evidence is more consistent with a breaking *out* which is not the crime charged and is not burglary under our statutes. In other words, defendant is saying that entry without a breaking and a later escape by breaking out does not constitute burglary. *State v. Ewing*, 298 S.W.2d 439, 444[4] (Mo. 1957). He further suggests there was no competent direct evidence of a burglarious entry if the case be measured by the evidence sans the hearsay testimony of the supermarket employee that a customer told him "she had seen somebody trying to get in that store." This ignores that no objection was made to such testimony and that "[h]earsay evidence, although otherwise inadmissible, when admitted without objection, is in a case for all purposes and may be given its natural and logical probative effect by the trier of the facts." *State v. Day*, 531 S.W.2d 780, 782[2] (Mo.App. 1975).

■ There was ample evidence to sustain the verdict. Upon arriving at the store, the police were directed by the supermarket employee to the place where the stocking-capped man seen inside the store had gone with the lawnmower removed from the store. In reaching the location to which they had been directed, the police found the lawnmower, a pry bar also removed from the store, and defendant trying to make his way through the dense thicket between the fences. A dark-colored stocking cap was found in the thicket. No one other than defendant was found in the area. A glass panel in the store's side door had been broken out in such fashion as to indicate the breaking occurred outside the building. There was blood on the broken glass, blood on the handle of the mower, and blood from a cut on defendant's hand. The aperture resulting from the breaking of the glass panel provided a sufficient opening for passage of a power mower which was of such size that it would cut a 19-inch swath. These facts are consistent with the following hypothesis: that defendant was the one who broke the glass panel from the side door and cut himself in so doing; that defendant gained entry into the store through that opening and, unable to pry open another exit, again used the broken panel opening to remove the mower, the pry bar and himself from the store; and that defendant proceeded to the rear of the premises where he abandoned the mower and pry bar and tried to make escape (losing the stocking cap in the process) through the thicket upon arrival of the police. *Turner v. State*, 267 So.2d 882–883[2] (Fla. App. 1972).

■ Defendant's second point is that the court erred in admitting into evidence State's Exhibit No. 1, which we have and which is a drawing of the burglarized premises showing its relation to adjacent streets. Defendant's only objection to the trial court was that the exhibit was not shown to have been drawn to scale and he will be limited to that specific objection upon appeal. *State v. Jones*, 515 S.W.2d 504, 506[3, 4] (Mo. 1974); *State v. Hindman*, 543 S.W.2d 278, 284[11] (Mo.App. 1976).

The testimony which was employed to gain entry of the exhibit into evidence was that of the supermarket employee. He testified the exhibit "looks like a drawing [of the store] . . . . I don't know whether it is drawn to scale, or not, but it is close . . . as far as the demensions [sic] [and] as far as the shape of the building, and the doors, and things, they are in the right places." The witness said the drawing would be of assistance to him in describing to the jury what he had seen on the night in question.

■ The admission into evidence of a diagram or drawing is largely within the discretion of the trial court, and the trial court's determination will not be disturbed upon appeal except in case of manifest er-

ror or an abuse of discretion. *State ex rel. State Highway Commission v. DeLisle*, 425 S.W.2d 938, 940[1] (Mo. 1968). Exhibit 1 was not used to measure distances, and whether it was drawn to scale or not had nothing to do with its use in the trial of this case. The drawing has been of considerable assistance to us in understanding the testimony, and we are certain it was an aid to the jury. There was no error in admitting Exhibit 1 into evidence. *Martin v. Sloan*, 377 S.W.2d 252, 263[15, 16] (Mo. 1964); *State v. Anderson*, 375 S.W.2d 116, 120[11] (Mo. 1964); *State v. Brooks*, 159 S.W.2d 646, 647[2] (Mo. 1942).

■ Defendant's penultimate point contends the trial court erred in denying his two oral motions to quash the array of prospective jurors because the presence in the courtroom of a person wearing a uniform, a badge and a holstered pistol made it appear that defendant was a dangerous person.

No evidence was offered on the motions nor at the hearing on the motion for new trial. The contents of motions and objections do not prove themselves [*Williams v. Williams*, 497 S.W.2d 415, 417[2] (Mo.App. 1973)] and do not constitute evidence of the purported facts stated therein. *State v. Daniels*, 347 S.W.2d 874, 876 (Mo. 1961).

Prior to and after making jury strikes, defendant's counsel moved that the array be quashed because of the presence of the uniformed officer and because the officer on one occasion "appeared, to me, to chase after my client  .  .  .  when my client headed for the restroom." The court responded by stating "that the incident you have described I did not see. But I would observe this: That there is a uniformed officer in the Court Room [sic], and he does wear a pistol  .  .  .  that the Bailiff is in plain clothes, and has no weapon displayed. And the Bailiff is busy on other matters and cannot be expected to attend to the security of the prisoner as well as to attend to the jury and the exhibits and the other matters that he is required to handle. The defendant is in custody, and he's charged with a crime, and I think it is

perfectly reasonable for one officer, who has not drawn his gun, but simply is in uniform, and wearing a badge and a holstered revolver, that he be permitted to accompany the defendant, particularly when the defendant goes unfettered, unhandcuffed, and goes to the restroom." The court also observed that the uniformed officer, when not escorting the defendant, was "simply seated next to the bailiff."

"While care should be taken to prevent the creation of an atmosphere prejudicial to an accused, courts may take all reasonably necessary precautions for the maintenance of order during the progress of a trial .  .  ., and for the retention of the custody of an accused." *State v. McKeever*, 339 Mo. 1066, 1083, 101 S.W.2d 22, 31[23] (1936); *State v. Johnson*, 539 S.W.2d 493, 514[43] (Mo.App. 1976). There is nothing in the record which indicates that the court exceeded its rights and duties in the matter. Defendant was not handcuffed, in leg irons or otherwise restrained by any device. Only one armed officer was present in the courtroom and, except for escorting defendant to the restroom, he was seated next to the bailiff during the proceedings, not hovering over the defendant. It was incumbent upon defendant to show prejudice by the mere presence in the courtroom of an armed officer. We find no such showing and deny the point. *Snow v. State of Oklahoma*, 489 F.2d 278, 280[5, 6] (10th Cir. 1973); *State v. Daniels*, supra, 347 S.W.2d at 876[1]; *State v. Edmonson*, 371 S.W.2d 273, 277[11] (Mo. 1963).

■ Finally defendant asseverates it was error to permit introduction of the stocking cap into evidence as a state's exhibit because "it had not been connected sufficiently with defendant in that defendant was never identified as having worn a stocking cap, it was not taken from his possession, and it was not shown to have any connection with the crime." We disagree.

While it is "true that to be admissible demonstrative evidence must be identified as the articles they are purported to be, and shown to be connected with the crime or with the accused[,]  .  .  .  such identifi-

cation is not required to be positive, absolute, certain, or wholly unqualified, and where there is some evidence for this purpose, objections to its sufficiency go to the weight rather than the admissibility of the articles in question." *State v. Threat*, 530 S.W.2d 41, 42[1] (Mo.App. 1975). As previously noted, a man wearing a dark-colored stocking cap was seen inside the burglarized store. The same stocking-capped man was seen leaving the store pushing a lawnmower to the rear of the premises where he disappeared into a dense thicket after abandoning the mower. Almost immediately thereafter defendant was discovered capless and floundering in the thicket where a dark-colored stocking cap was found caught on some growth therein. This evidence was sufficient to connect the cap to the crime and to the defendant. The trial court did not err in admitting the cap as an exhibit.

Judgment affirmed.

All concur.