**STATE of Missouri, Respondent,**

v.

**Donald Dale HOLT, Appellant.**

**No. 11339.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 8, 1980.

John D. Ashcroft, Atty. Gen., Paul M. Spinden, Asst. Atty. Gen., Jefferson City, for respondent.

Scott B. Tinsley, Springfield, for appellant.

TITUS, Presiding Judge.

As a second offender (§ 556.280 RSMo 1969), defendant was charged with and jury-convicted of stealing a television set having a value of at least $50. §§ 560.156–1(2) and 560.161–1(2) RSMo 1969. Following denial of the after trial motions, defendant was court-sentenced to confinement with the Missouri Division of Corrections for a term of eight years. Defendant appealed and his appellant's brief in this court contains 12 points relied on.

Point relied on I: "The trial court abused its discretion and erred in failing to grant defendant's applications for continuance, filed on grounds of unavailability of two defense witnesses, for the reason that said applications were timely, met the requirements of Section 545.720 RSMo., and were necessary to obtain substantial justice because the testimony of said witnesses were essential to the defense of not guilty by reason of mental disease or defect excluding responsibility."

██ What two defense witnesses were unavailable, wherein and why the applications for a continuance met the requirements of the law and wherein and why the testimony of the witnesses, whatever it may have been, was essential to the defense stated, is left for us to guess. Appellate courts bear no duty to seek through the transcript on appeal or the argument portion of a defendant's brief to gain understanding of possible intendments of points presented in a conclusionary and abstract fashion. *State v. McMillin*, 581 S.W.2d 612, 615[3] (Mo.App.1979). Points relied on which are written contrary to the mandatory requirements of Rule 30.06(d), V.A.M.R., and which cannot be comprehended without resorting to the transcript or other sections of the brief, preserve nothing for appellate review. *State v. Drake*, 514 S.W.2d 653, 655[2] (Mo.App.1974).

Point relied on II, in essence, claims the trial court erred in not suppressing the identification testimony of Colleen Prine Cobb and permitting her testimony at trial because the pretrial identification procedure of the defendant at the Springfield police station was unduly suggestive causing a likelihood of misidentification.

Mrs. Cobb, testifying on the motion to suppress and at trial, recounted that she was employed and present in the store from which the television set was stolen at the time the theft occurred. She stated that defendant had been in the store 15 to 20 minutes before she saw him take the set and that during approximately 10 minutes of that time she had particularly watched defendant "[b]ecause he didn't seem to have any business in the store, just hanging around . . . just acting very strangely." The last three or four uninterrupted minutes Mrs. Cobb was watching defendant, she had an unobstructed view of his face. This occurred just before and as defendant turned and walked out of the store with the television.

██ The evidence was that within two hours after observing the theft, Mrs. Cobb was taken to police headquarters to ascertain if she could identify "the man." She was not told she would see "the man that took the tv out of the store", and identified defendant as the thief from one of three persons she saw in a room. As did the trial court, we conclude the identification procedures were not impermissibly suggestive. Cf. *State v. Dickerson*, 568 S.W.2d

559, 561[3] (Mo.App.1978); *State v. Armbruster*, 541 S.W.2d 357, 361[4] (Mo.App. 1976). But even assuming, arguendo, the line-up or show-up procedures "were impermissibly suggestive, we find no want of due process in the trial court's rulings on the identification testimony. Reliability, not suggestiveness, 'is the linchpin in determining the admissibility of identification testimony . . .' . . . and reliability of the in-court identification testimony is to be assessed under the 'totality of the circumstances.' . . . Factors to be considered include: (1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." *State v. Higgins*, 592 S.W.2d 151, 160[13, 14] (Mo. banc 1979).

No one can seriously doubt that Mrs. Cobb had and exercised the opportunity to view the defendant at the time the crime was being committed and for several minutes prior thereto. Because of defendant's appearance and conduct while in the store, Mrs. Cobb's attention was high. Except for not knowing what kind of shirt he was wearing, Mrs. Cobb was able to and did give the police a most accurate description of the defendant, and was most certain of his identification upon confrontation which occurred in less than two hours after the crime's commission. Consequently, even if the line-up or show-up procedures had been unduly suggestive, and we have found they were not, there was sufficient reliability in the witness' in-court identification to overcome defendant's complaints thereof. Point relied on II is denied.

Points relied on III and IV complain of the trial court's overruling "Defendant's Motion for Judgment of Acquittal at the Close of the State's Case-In-Chief" for various reasons. In this regard we note that after the court overruled the motion, defendant produced 12 witnesses, including himself, in the defense of the cause. By introducing evidence in his own behalf, defendant waived any error with respect to overruling the motion for judgment of acquittal at the close of the state's case. *State v. McMullin*, 576 S.W.2d 581, 582[1] (Mo.App.1979); *State v. Mack*, 576 S.W.2d 550, 552[5] (Mo.App.1978). Nevertheless, point III predicates the claim of error on the false assumption that the evidence failed to establish the value of the stolen television of at least $50. It is enough to say there was ample evidence to establish the stolen item had such a value and the question as to the value of stolen property was properly a question for jury consideration. *State v. Webb*, 527 S.W.2d 728, 730[3] (Mo.App.1975). Under point IV the claim of error revolves around defendant's assertion that the evidence was insufficient to properly identify Exhibit 14 as the stolen television set and was insufficient to prove ownership. "One is guilty of stealing if he takes property from the person who has charge and control thereof" [*State v. Webb*, 400 S.W.2d 84, 86[6] (Mo.1966)] and the evidence was abundant that the set had been taken from the employees of the company who had charge of and control over the television. Two store employees made positive and direct identification of the exhibit as being the stolen set. However, even if the testimony of other witnesses was only to the effect that the exhibit "looks like", "looks familiar", "very much like", "very similar", etc., such testimony would have been sufficient to warrant its admission into evidence. *State v. Ridinger*, 589 S.W.2d 110, 113[4] (Mo.App.1979).

Defendant's point relied on V asseverates the court erred in permitting a uniformed, armed deputy sheriff to be present in the courtroom and seated to the rear of defendant in the spectator section. He claims that this made it appear that defendant was a dangerous and hostile person. The record discloses that at defendant's first trial on the charge herein concerned, his conduct and actions were so extraordinary and disruptive that the trial judge, after repeated warnings, had defendant removed from the courtroom.

Although courts should take care to avoid an atmosphere prejudicial to a defendant, they may take all reasonable and necessary precautions for the maintenance of order during the progress of a trial and for the retention of the defendant's custody. *State v. McKeever*, 339 Mo. 1066, 1083, 101 S.W.2d 22, 31[23] (1936); *State v. Johnson*, 539 S.W.2d 493, 514[43] (Mo.App. 1976). The record does not indicate that the trial judge exceeded his rights and duties in this instance. Defendant was not handcuffed, in leg-irons or otherwise restrained. In view of defendant's known pugnacious conduct at his first trial, it was not amiss for the court to have an armed officer seated in the courtroom to insure the proper decorum and safety of those present if necessary. It was defendant's burden to show prejudice by the mere presence of an armed officer in the courtroom. We find no such showing. Point relied on V is denied. *State v. Anderson*, 555 S.W.2d 362, 365[7] (Mo.App.1977).

Point relied on VI states: "The court erred in failing to sustain defendant's motion for disqualification of judge for the reason that the court was biased and prejudiced against defendant as demonstrated by the evidence adduced at the hearing on said application." Although the point, in a most general way, undertakes to say "wherein" the trial court erred, it does not indicate "why" the evidence adduced at the hearing, whatever that may have been, demonstrated that the judge was biased and prejudiced against defendant. As herein previously noted, an appellate court is not obliged to seek through the transcript on appeal or the argument portion of an appellant's brief to ascertain the intendment of points written in abstract fashion. Defendant's failure to say "why" the hearing evidence demonstrated bias and prejudice results in the point preserving *nothing for our review.* *State v. Tsiboukas*, 584 S.W.2d 438, 439[1, 2] (Mo.App.1979). We gratuitously note, however, that there had been three previous changes of judges in the case before the motion in question was filed and considered, · that there is no merit to defendant's assertion that the hearing evidence showed bias

and prejudice on the part of the trial judge and that a party is only entitled to one change of judge as a matter of right. Former Rule 30.12; *State v. Euell*, 583 S.W.2d 173, 174[1] (Mo. banc 1979).

Point relied on VII, also written in disregard of the mandates of Rule 30.06(d), V.A.M.R., claims the trial court erred in denying defendant's request for a hearing pursuant to § 552.020–6, RSMo 1969, regarding the report of Dr. Hulstra because the "statutory provision is mandatory" and Dr. Hulstra's "testimony was based on hearsay, was based on faulty testing, and was prejudicial intending to disprove the defense of mental disease or defects."

Through extreme tolerance and forebearance on the part of both court and counsel in pretrial proceedings and in the trial itself, defendant often appeared to be acting as chief counsel for the defense rather than the accused. For example, defendant filed supplemental motions for a new trial and the best we can calculate, they consume some 31 pages, or more, of the transcript on appeal. It suffices to say, that defendant's many previous experiences in the courts and exposure to prison-based schooling, have endowed him with a remarkable acquaintance with and knowledge of the working lores of the law and how to postpone, if not avoid, its prompt processing.

In connection with point relied on VII, a letter, written by defendant, asked the court to consider the epistle "as a request for hearing contesting the psychiatric evaluation" by Dr. Hulstra "pursuant to Chapter 552, § .020." It is to be noted that § 552.020–6, RSMo 1969, referred to specifically in point VII, and its reference to subsec. 3, subd. (3) of the same section of the statute, concern opinions regarding a defendant's ability vel non, due to mental disease or defect, "to understand the proceedings against him or to assist in his own defense" or "fitness to proceed" with a trial. When the matter of the letter request was being considered ere trial, defendant himself did not contend any then inability to understand the proceedings or to assist in

his own defense. Rather, defendant said "my defense is not guilty by reason of temporary insanity" at the time of crime commission, which is clearly different from a claim of present lack of ability to understand the proceeding so as to absolutely bar a trial or a conviction. The point is denied.

 Point relied on VIII complains of the trial court's refusal to sustain defendant's motion for a change of venue from Greene County. We take judicial notice that the population of Greene County is in excess of 75,000 [*State v. Wilcox*, 44 S.W.2d 85, 86–87[1] (Mo.1931)] and observe a criminal defendant is not entitled to a change of venue from such a county to another simply because he alleges prejudice against him on the part of the inhabitants. Former Rule 30.04, and § 545.490 RSMo 1978, both require the application or motion for such change to be "supported by the affidavit of petitioner and the affidavit of at least two credible disinterested citizens of the county." As the application herein was not accompanied by the required affidavits, the trial court did not err in denying the motion. *State v. Euge*, 349 S.W.2d 502, 505[6, 7] (Mo.App.1961).

 Point relied on IX reads: "The court erred in overruling defendant's request for disqualification of the special prosecutor for the reason that at defendant's pre-trial hearing on said motion, it was disclosed that particular prejudice against defendant by the special prosecutor existed, thus depriving defendant of his right to a fair trial, particularly in light of evidence that defendant and said special prosecutor had numerous prior confrontations." Defendant's testimony on the motion was, in substance, that the special prosecutor should be disqualified because when he had been the prosecuting attorney he previously had prosecuted defendant on other matters, and because defendant's appointed lawyer in the first trial of this case had once been an assistant to the special prosecutor when the latter was the prosecuting attorney. How the latter half of the complaint should cause disqualification of the special prosecutor in the second trial

wholly escapes us. Section 56.110, RSMo 1978, on which defendant relies, in part states: "If the prosecuting attorney . . . be interested . . . in any case where such employment is inconsistent with the duties of his office, . . . the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause." The first part of defendant's evidentiary complaint against the special prosecutor clearly does not fit the mold presented in § 56.110, supra, for disqualification. Cf. *State v. Burton*, 544 S.W.2d 60, 68 (Mo.App.1976).

 Point relied on X complains of the refusal of the court to declare a mistrial because the special prosecutor continued questioning defendant's witnesses Wooliver and Cecil Holt (defendant's father) concerning their prior convictions, after the witnesses had denied same. Actually, on direct examination Wooliver had admitted to having been once convicted of a crime, but on cross-examination denied another conviction on March 9, 1973, for felonious assault. When asked if there were "any other Kenny Eugene Wooliver in town", Wooliver the witness said there was one but "he's dead now." However, he then acknowledged the decedent was "Kenny Joe Wooliver." Later the special prosecutor advised the court that Wooliver had, in fact, been convicted of felonious assault on the date mentioned but that he was unable to secure from the court clerk a copy of the records regarding the conviction because the only record was then on microfilm. He also advised the court that the records in the prosecuting attorney's office showed such a conviction so that the court would "know that I did ask those questions in good faith, they were not wild questions designed to prejudice the witnesses or the defendant."

On cross-examination, Cecil Holt denied having been convicted of any crime, particularly being convicted of displaying a dangerous and deadly weapon on March 29, 1957. The special prosecutor later determined that Cecil Holt had, in fact, been convicted of drunken driving on the date in question, but that he had misinterpreted

the abbreviation on the record for designation of the crime. This was explained to the court to demonstrate the special prosecutor's good faith in asking the questions.

"In *State v. McBride*, Mo., 231 S.W. 592, 594, on similar facts as here, the court said, 'If the prosecutor knew or had information that the defendant [here the witnesses] had served a term in the penitentiary of New York [or had been convicted of crimes], it was entirely proper for him to ask the witness about it, *although he may not have had a record of such conviction in a form to be admissible in contradiction of the witness.* [See § 491.050 RSMo 1978]. He took his chance on that. We cannot infer, because he failed to produce the record after the defendant denied his conviction, that the question was not asked in good faith. * * * He had the advantage of his denial, and in the argument had the advantage of the failure of the state to attempt to contradict him in regard to it.' (Emphasis supplied)." *State v. Ware*, 449 S.W.2d 624, 626 (Mo. 1970).

We think the record corroborates the good faith of the special prosecutor in asking the questions of the two witnesses. Moreover, any harmful effect of the questions put to the witnesses of which defendant complains was removed by the court's instruction to the jury to disregard the same. Cf. *State v. Durham*, 418 S.W.2d 23, 27–28[9] (Mo.1967).

■ Point relied on XI claims trial court error for its failure to grant defendant's motion to dismiss the charge on the ground of former jeopardy. This is predicated on the fact that following defendant's conviction on the first trial of the charge, the conviction was set aside and defendant was granted a new trial. This was not double jeopardy. *Thompson v. State*, 576 S.W.2d 541, 549 (Mo.App.1978) and cases there cited.

■ Finally, under point relied on XII, defendant claims the trial court erred in not granting him a new trial because of newly discovered evidence as shown via an affidavit of one Johnny Whitworth wherein it is stated that Whitworth, not defendant, stole the television set in question. A trial court has broad discretion in the matter of granting a new trial on the basis of newly discovered evidence, but such grants are not favored by the courts. *State v. Woods*, 577 S.W.2d 122, 124[2] (Mo.App.1979). "In order for an appellant to secure a new trial on the ground of newly-discovered evidence, the evidence must have come to his knowledge since the trial; he must not be guilty of a lack of diligence in discovering it; it must be material and probably produce a different result on a new trial; it must not be merely cumulative; and its object must not be to impeach the character or credit of a witness." *State v. Burton*, supra, 544 S.W.2d at 66.

■ Defendant, through personal tactics and those of his various counsel (perhaps at defendant's behest), had succeeded in delaying his trial for nearly two years. In connection with an application for a continuance, defendant acknowledged that for a considerable time (i. e., "several weeks" or "a month or two") he was aware that Whitworth possessed "favorable testimony" for the defense, yet defendant never subpoenaed Whitworth nor had him placed under a material witness bond to insure his appearance at trial. This was not a new discovery after trial nor diligence. Also, the object of such so-called newly discovered evidence could only serve to impeach the state's eyewitness who identified defendant as the perpetrator thereof. Defendant has not demonstrated here that the ruling of the trial court, in denying the grant of a new trial for the reasons concerned in point relied on XII, was an abuse of discretion on the part of that court.

For the reasons above stated, the judgment below is affirmed.

FLANIGAN, C. J., and GREENE, J., concur.

PREWITT, J., concurs in result only and files opinion.

PREWITT, Judge, concurring.

I concur in the result but consider that each point presented was properly raised. I

think defendant had a fair trial and there was no prejudicial error. The principal opinion may be correct that certain points were not preserved, as the rules relating to points relied on have been interpreted, but I think they were preserved as the rules are written. I believe that each point substantially complied with Rule 30.06(d), V.A.M.R., as I read it; although perhaps not as Rule 84.04(d), which is identical, has been interpreted.

In *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978), a careful and comprehensive explanation of the requirements of Rule 84.04(d) was made. However, problems in complying still frequently appear and I do not think it is entirely the fault of counsel. Rule 30.06(d) and Rule 84.04(d) require that points "shall" be stated "briefly and concisely". Stating a point briefly and concisely is not always possible when it must set forth much detail. In order to comply with the rules as interpreted, counsel may have to also violate them because a point cannot be stated briefly and concisely. If counsel seek to be brief and concise, then they may violate the requirements of the rules as they are interpreted. I think the cases intend that points relied on be as brief and concise as the circumstances may allow, but must be understandable without resort to the argument portion of the brief or the record on appeal. Unfortunately, that is not what the rules say. I believe that due to this possible confusion we should resolve any doubt as to compliance in favor of deciding the point on the merits.

I agree that there are good reasons for the requirements of these rules as interpreted, as those reasons are well stated in *Thummel*, 570 S.W.2d at 686. However, I think the wording in these rules can be misleading and in seeking to follow the rules as written, counsel may be violating them as interpreted.